UNITED STATES of America, Appellee,

v.

Leon Timothy REVELS, Appellant.

No. 76–1343.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1978.

Decided April 19, 1978.

C. Robert Faucette, Spartanburg, S.C., for appellant.

William A. Coates, Asst. U.S. Atty., Greenville, S.C. (Thomas E. Lydon, Jr., U.S. Atty., Columbia, S.C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

Leon Timothy Revels was indicted for kidnapping, 18 U.S.C. § 1201, and, following a trial to a jury, was convicted and sentenced to 30 years in prison. He appeals and contends that the failure of the trial court to give the instruction approved in *United States v. Holley,* 502 F.2d 273 (4th Cir. 1974), or its substantial equivalent was plain error necessitating reversal of the conviction. We disagree and affirm.

I.

FACTS

On June 24, 1975, in Spartanburg, South Carolina, a young college student, whom we will refer to as the victim, was kidnapped from a downtown parking lot about noon. At knifepoint, she was forced into an older model, white automobile with a loud rumbling muffler. There were three men in

the car—two in the front and one in back. She was forced to lie on the floorboards of the back seat. Following a four or five-hour ordeal during which time she was taken out of the car and raped on a country road, the victim managed to escape by climbing through a bathroom window at a service station in Charlotte, North Carolina. Her abductors chased her in their automobile while she was on foot, but she was able to escape. By then it was sunset.

Shortly thereafter on July 1, 1975, the victim was interviewed by the F.B.I. and commenced cooperation with them. Various facial features were studied and a photographic composite likeness of one of the attackers was prepared.[1] She was shown the first photographic composite on July 21, 1975, less than one month after her abduction, and she suggested certain changes in the ears, cheeks, and nose. The suggested changes were made and on August 14, 1975, she was again shown the revised composite which she identified as her attacker and one of the abductors.

Following further investigation by the F.B.I., on October 10 or 11, 1975, the victim was shown a group of nine photographs of white males from which she identified the defendant. She was unable to adequately describe or otherwise identify the two companions of the defendant who allegedly assisted him in the kidnapping. The defendant was the sole indictee on the kidnapping charge.

The government's case consisted of the testimony of the victim concerning the factual circumstances surrounding the abduction and her escape, and also a positive in-court identification of the defendant as the rapist and as one of her three abductors. The very size of the defendant was a factor in his identification. He testified that at the time of the crime he weighed between 400 and 425 pounds. The revised version of the composite drawing was admitted in evidence without objection. Additionally, the nine photographs, from which the victim chose the picture of the accused, were also introduced into evidence.

The government corroborated the identification of the accused by presenting testimony of several witnesses who had known the defendant for several years in and around his hometown in Gaston County, North Carolina. Each such witness testified that he or she had seen the defendant in Gaston County on or about the date of the kidnapping, thereby placing him at the center of a 60-mile radius which encompassed both Charlotte and Spartanburg. They also testified that the defendant, wearing a beard and a mustache, was seen in an old white car with a loud muffler.

The defense was alibi and misidentification. The defendant testified he was in New York City at the time of the crime. He further testified contrary to the victim relative to his physical appearance at that time. In addition, the defendant attempted to throw suspicion upon his deceased brother.[2]

The jury was instructed concerning the theory of the alibi defense, and general instructions were given which referred to the question of identification as well as reasonable doubt. There is no dispute that the instruction set forth in *United States v. Holley*, 502 F.2d 273 (4th Cir. 1974), or its substantial equivalent was not requested by counsel, nor given by the court, nor was there an objection thereto. The sole question presented is whether that omission was plain error, F.R.Cr.P. 52(b).

## II.

### THE HOLLEY INSTRUCTION

In *United States v. Holley, supra,* we were concerned with the possibility of mistake and conviction of an innocent person inherent in one-on-one identification. In that case, a bank robbery, one witness of three who at first was unable to identify the defendant from his photograph, four months later picked him out from a group of ten prisoners and still later made an

---

1. The composite was prepared from an F.B.I. facial makeup kit.

2. The defendant's brother was killed in an automobile crash in November, 1975.

in-court identification. We there approved, prospectively, the use of the model instruction contained in *United States v. Telfaire,* 152 U.S.App.D.C. 146, 469 F.2d 552 (1972). The rule in *Holley* was not an absolute rule requiring *per se* adherence thereto, but was stated flexibly since "[d]ifferent factual situations obviously call[ed] for different degrees of particularity," *Holley, supra,* at 277.

### III.

### PLAIN ERROR

■ Under the factual situation presented here, we hold that the failure of the trial court to give the *Holley* instruction or its substantial equivalent, *sua sponte,* was not plain error. The *Holley-Telfaire* instruction or its substantial equivalent is not required to be given, *sua sponte,* in a case where other independent evidence, whether direct or circumstantial, or both, is presented to the trier of fact which is corroborative of the guilt of the accused.

■ A comparison of the facts in this case with the relevant factors which are to be weighed in the assessment of the reliability of identification testimony leads us to conclude that based upon the totality of the circumstances, the identification of the accused as the abductor-assailant was indeed reliable. *See Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *United States v. Levi,* 405 F.2d 380 (4th Cir. 1968).

The defendant weighed between 400 and 425 pounds. The victim was continuously with her abductors from noon until sunset. She was transported from Spartanburg, South Carolina, to Charlotte, North Carolina, and while outside the car, with the defendant for some two hours of her six-hour ordeal, was raped. No evidence indicates she was blindfolded and even while riding in the floorboard of the car, she had more than a sufficient opportunity to closely scrutinize her abductor and assailant.

The victim's attention must have been acute despite her terror. Following her escape, and during her cooperation with the F.B.I., she was able to give a detailed description of the assailant-abductor, and not only aided in the preparation of a composite sketch of the accused, but refined it to more accurately portray him.

The accuracy of the victim's prior description was totally consistent with her first description of him through her testimony at trial. Indeed, the photo-composite later enabled the F.B.I. to assemble the nine photographs which she viewed, and from which she chose the picture of the accused. The resemblance of the sketch to the photograph was remarkable.

While we review a cold record, it clearly appears to us, and must have so appeared to the trial court and jury below, that the victim's identification of the accused, including her in-court identification of him, was certain. We conclude from the totality of the circumstances that the identification of the accused as the victim's abductor-attacker was reliable, and the indicia of reliability were corroborated by other evidence of Revels' guilt. Various police officials and others testified that Revels was in and around his hometown area, within a 60-mile radius of both Spartanburg and Charlotte during mid June, 1975.

Finally, the victim positively identified the accused in court even though his appearance had been altered since the abduction. *See e.g., United States v. Davis,* 481 F.2d 425, 427 (4th Cir. 1973), *cert. denied,* 414 U.S. 977, 94 S.Ct. 296, 38 L.Ed.2d 220 (1973).

Failure to give the Model Special Instructions on Identification appended to *Holley,* if error, was harmless beyond a reasonable doubt.

The judgment is

*AFFIRMED.*