UNITED STATES, Appellee,

v.

Ronnie McLAURIN, Private, U.S. Army, Appellant.

No. 51,936.

CM 441770.

U.S. Court of Military Appeals.

Aug. 18, 1986.

For Appellant: Captain Pamela O. Barron (argued); Colonel Brooks B. La-Grua, Lieutenant Colonel Arthur L. Hunt, Captain Bernard P. Ingold (on brief); Colonel William G. Eckhardt, Major Marion E. Winter, Captain James J. McGroary, Captain Thomas J. Feeney, Captain Jesse W. Bendahan.

For Appellee: Captain Patrick A. Hewitt (argued); Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Joseph A. Rehyansky (on brief); Lieutenant Colonel Gary F. Roberson and Captain Dean C. Berry.

*Opinion of the Court*

COX, Judge:

During May and June 1981, appellant was tried by a general court-martial composed of officer and enlisted members. Contrary to his pleas, he was convicted of absence without leave, two specifications of rape, forcible sodomy, indecent assault, communication of a threat, and three specifications of unlawful detention, in violation of Articles 86, 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 920, 925, and 934, respectively. The sentence to confinement for 35 years, total forfeitures, reduction to E–1, and a dishonorable discharge was ultimately approved by the convening authority, but a portion of the forfeitures was suspended. The

Court of Military Review dismissed the three specifications of unlawful detention, reduced the period of confinement to 30 years, but otherwise affirmed the findings and sentence.

We granted review to determine:

WHETHER THE MILITARY JUDGE ERRED BY NOT SUA SPONTE INSTRUCTING THE COURT MEMBERS ON IDENTIFICATION TESTIMONY WHEN THE EVIDENCE INDICATED A DANGER OF MISIDENTIFICATION.

We hold that the military judge had no *sua sponte* duty to instruct on eyewitness identification and affirm.

Appellant was convicted of raping Private Darlene[1] Ballard, raping and forcibly sodomizing Private Katherine Mansell, and indecently assaulting Private Edna Mitchell, all offenses occurring on Fort Jackson, South Carolina. The Government's case consisted primarily of the eyewitness identification of appellant as the perpetrator by the three victims, none of whom had a prior acquaintance with appellant or with each other.

Ballard was abducted and raped about 9:45 a.m. on March 31, 1980, by a lone, black male driving a white Dodge Charger. Shortly after the attack, Ballard made a statement describing her assailant as being about 35 years old, 6–feet 2–inches tall, balding on top, and wearing a mustache. At the time she made the statement to CID, Ballard explained that she was "high" from the medication she had been given. One year after the attack, she was contacted by a CID agent and asked to view a line-up consisting of black-and-white photographs of six black males with mustaches. She identified appellant as her attacker then and again at trial.

On February 7, 1981, Mansell was abducted by three black men in an orange Vega as she was walking to her barracks. She testified that she was raped twice by each of the men, sodomized, threatened, and beaten. She identified appellant as the one who grabbed her, forced her into the

back seat of the car, and sat beside her on the ride to and from the deserted area where the sexual attacks occurred. She estimated that her ordeal lasted approximately 25 minutes. When shown a photo line-up on March 4, she identified a Mr. Allen Rowle as the rapist who drove the car. Upon being shown another photo line-up, one that contained the picture of appellant, she identified appellant as the rapist who sat in the back seat with her. She again identified appellant in the courtroom as one of her attackers, but stated that he appeared to have lost fifteen pounds and to be "cleaner shaven." She described the man who shoved her into the car as being about 5–feet 9–inches tall, having a short afro 2– to 3–inches long, and wearing rose tinted sunglasses. Mansell, who apparently was not black herself, admitted on cross-examination that she had difficulty distinguishing one black man from another, but insisted that she had no problem identifying appellant.

Late in the afternoon of February 15, 1981, Privates Janet Singh and Edna Mitchell were accosted by two black men in a blue Oldsmobile Cutlass. The two women were ordered into the back seat of the car and driven to a wooded area near the rifle range. When the car stopped, the driver took Private Singh into the bushes where he raped her. The passenger, later identified by Private Mitchell as appellant, pulled Mitchell out of the back seat, and sexually assaulted her. Both women testified that the clock on the dashboard of the car was broken and stopped at 1740 hours.

On February 23, Mitchell and Singh were separately shown a photographic line-up by a CID agent. Both identified a picture of Rowle, stating that he was the driver. On March 4, both women were separately shown a second photographic line-up. Mitchell identified the picture of appellant, stating that he was the passenger in the blue Cutlass and the man who assaulted her. Private Singh was unable to identify anyone in the second photographic line-up.

---

1. The specification erroneously referred to her as "Donna." *See* R.88.

At trial, Mitchell again identified appellant as the passenger in the car, the man who had assaulted her. She described the passenger as having short hair parted on the side, about 5–feet 5–inches in height, and not wearing glasses. Singh described the passenger as wearing glasses and having thinning hair worn in an afro hairstyle. She testified that she was not sure whether appellant was the passenger, admitting that the day before trial she told defense counsel that appellant was not the man.

Evidence showed that appellant was an unauthorized absentee from his unit at Ft. Bragg, North Carolina, from February 6 to 23, 1981. Appellant was linked to Allen Rowle, identified as a co-actor in two of the incidents, by the testimony of Specialist Four Pamela Sanders. She testified that, in February 1981, she was stationed at Fort Jackson, South Carolina. At that time, Allen Rowle was her fiance. She further testified that appellant and Mr. Rowle were "buddies." She owned a 1978 blue Oldsmobile Cutlass which Mr. Rowle could use at any time and to which Mr. Rowle had his own set of keys after February 1980. The clock on the dashboard of the Cutlass did not work and was stopped at 1740 hours.

The defense presented no evidence and sought to raise doubts concerning the eyewitness identifications of appellant as the perpetrator through cross-examination of the victims. During argument, defense counsel emphasized that "the only question that runs throughout each and every specification before the court, is the question about the identity of the perpetrator of the offenses, the only question." Defense counsel did not request, and the military judge did not give, an instruction on eyewitness identification.

The "dangers inhering in eyewitness identification," particularly of a stranger encountered under stressful conditions,

have been recognized by the courts and the object of much comment. *United States v. Wade*, 388 U.S. 218, 229, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967) (footnote omitted). *See* Note, *Eyewitness Identification Testimony and the Need for Cautionary Jury Instructions in Criminal Cases*, 60 Wash.U.L.Q. 1387 (Winter 1983). In *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court listed five factors to be considered in determining the reliability of identification testimony: (1) "the opportunity of the witness to view the criminal at the time of the crime"; (2) "the witness' degree of attention"; (3) the similarity between "the witness' prior description of the criminal" and the actual description of the accused; (4) the witness' "level of certainty" in the correctness of the identification as demonstrated "at the confrontation"; and (5) the lapse "of time between the crime and the confrontation." *Id.* at 199–200.

As acknowledged in *Watkins v. Sowders*, 449 U.S. 341, 347, 101 S.Ct. 654, 658, 66 L.Ed.2d 549 (1981), "the *only* duty of a jury in cases in which identification evidence has been admitted will often be to assess the reliability of that evidence." In *United States v. Telfaire*, 469 F.2d 552 (D.C.Cir.1972), the Court advocated a special identification instruction which incorporates factors similar to those articulated in *Neil v. Biggers, supra*, to minimize the dangers of misidentification. The text of this instruction is contained in the appendix to this opinion.

■ We agree with appellant that a *Telfaire*-like instruction could be helpful to the members in evaluating identification testimony. We urge, as do most of the federal courts, the giving of such an instruction, if requested, when identification is a primary issue in the case.[2] *See United*

2. We also approve use of the model instruction on inter-racial identification suggested by Chief Judge Bazelon in his concurring opinion in *United States v. Telfaire*, 469 F.2d 552 (D.C.Cir. 1972), which states:

In this case the identifying witness is of a different race than the defendant. In the ex-

perience of many it is more difficult to identify members of a different race than members of one's own. If this is also your own experience, you may consider it in evaluating the witness's testimony. You must also consider, of course, whether there are other factors present in this case which overcome

*States v. Thoma,* 713 F.2d 604 (10th Cir. 1983), *cert. denied,* 464 U.S. 1047, 104 S.Ct. 721, 79 L.Ed.2d 183 (1984); *United States v. Scott,* 578 F.2d 1186 (6th Cir.1978); *United States v. Revels,* 575 F.2d 74 (4th Cir.1978); *United States v. Kavanagh,* 572 F.2d 9 (1st Cir.1978); *United States v. Dodge,* 538 F.2d 770 (8th Cir.1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1119, 51 L.Ed.2d 547 (1977); *United States v. Gentile,* 530 F.2d 461 (2d Cir.), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976); *United States v. Hodges,* 515 F.2d 650 (7th Cir.1975); *United States v. Barber,* 442 F.2d 517 (3d Cir.), *cert. denied,* 404 U.S. 846, 92 S.Ct. 148, 30 L.Ed.2d 83 (1971).

■ Appellant asks us to go further, however, and reverse this case based on the military judge's failure to *sua sponte* instruct on this issue. Although a cautionary instruction on eyewitness testimony, if requested, would have been appropriate, a conviction will not be reversed due to a *sua sponte* failure to instruct unless the omission rises to the level of plain error. *United States v. Fisher,* 21 M.J. 327 (C.M.A. 1986). *See* R.C.M. 920(f), Manual for Courts-Martial, United States, 1984.

■ While military law has required the military judge to instruct *sua sponte* on some issues, the issue presented here has never been specifically addressed. The military judge gave the standard instructions contained in the *Military Judge's Guide,* Department of the Army Pamphlet 27–9 (1969), properly instructing on reasonable doubt, credibility of witnesses and burden of proof. If defense counsel deemed the instructions as given to be unclear or to imprecisely address an issue, he had the obligation to raise an objection or seek clarification. *United States v. Salley,* 9 M.J. 189 (C.M.A.1980).

■ In any event, the attention of the members was sharply focused on the issue of identity by the Government's case, as well as the cross-examination of the witnesses and the argument of counsel. The three victims had ample and close opportunity to observe their assailant at the time of the crime. All of them unhesitatingly identified appellant's photograph from an array of similar photographs the first time they were shown his picture. There was no prior inconsistent identification. Their identifications remained positive despite certain disparities in descriptions.[3] The primary disparity among the descriptions was the height of the assailant. Height was a feature that they had little opportunity to observe, however, as their assailant was for the most part either sitting in the car or *in flagrante delicto.* None of the women who identified appellant as the rapist was a "casual observer, but rather the victim of one of the most personally humiliating of all crimes." *Neil v. Biggers,* 409 U.S. at 200, 93 S.Ct. at 382–83 (footnote omitted). The testimony of Singh, the one witness who could not identify appellant, was weakened by lack of opportunity to observe Mitchell's assailant. We conclude that failure to give a cautionary instruction under the circumstances of this case did not constitute plain error.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge SULLIVAN did not participate.

### APPENDIX

One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime.

---

any such difficulty of identification. For example, you may conclude that the witness has had sufficient contacts with members of the defendant's race that he would not have greater difficulty in making a reliable identification.[10]

[10] This instruction would immediately precede the reference to identification by senses other than sight in the Model Instruction.

*Id.* at 561.

**3.** No description of appellant is contained in the record, other than the photograph from which he was identified by the victims. It depicts only a frontal view of his head and shoulders.

The Government has the burden of provi[ng] identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

In appraising the identification testimony of a witness, you should consider the following:

(1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

[In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight—but this is not necessarily so, and he may use other senses.]*

(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

[You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.]

[ (3) You ma[y] take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial.]

(4) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the de

---

* Sentence in brackets ( [ ] ) to be used only if appropriate. Instructions to be inserted or modified as appropriate to the proof and contentions.