UNITED STATES, Appellee,

v.

Sergeant John R. JOHNSON, 372–72–6381, United States Army, Appellant.

ACMR 8600330.

U.S. Army Court of Military Review.

30 Nov. 1987.

For Appellant: Lieutenant Colonel Joel D. Miller, JAGC, Captain Stewart C. Hudson, JAGC, Captain Robert P. Morgan, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Major Byron J. Braun, JAGC, Captain Brendan F. Flanagan, JAGC (on brief).

Before DeFORD, KANE, and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Senior Judge:

Contrary to his pleas, appellant was convicted, by a general court-martial with members sitting in Baumholder, Federal Republic of Germany, of rape and indecent assault[1] in violation of Articles 120 and 134, Uniform Code of Military Justice (hereinafter UCMJ), 10 U.S.C. §§ 920 and 934 (1982). He was also convicted, pursuant to his pleas, of four specifications of

---

1. Appellant was originally charged in the Specification of Charge II with having committed sodomy, in violation of Article 125, UCMJ, 10 U.S.C.A. § 925. The panel found him not guilty of sodomy, but guilty of the lesser included offense of indecent assault. In the interest of clarity, we will simply refer to this allegation as one alleging indecent assault.

adultery, in violation of Article 134, UCMJ. His approved sentence included a bad-conduct discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to the grade of Private E–1.

Appellant appeals his conviction alleging: (1) the military judge erred to his substantial prejudice by failing to instruct on the reasonably raised defense of mistake of fact; and, (2) the record contains insufficient evidence to disprove the affirmative defense of mistake of fact beyond a reasonable doubt. Following submission of pleadings, the court specified an additional issue as to whether there was sufficient evidence of record to support the findings of guilty of rape and indecent assault with regard to the degree of resistance, if any, offered by the victim.

Appellant government counsel argue: (1) that if the affirmative defense was in fact raised by the evidence, the appellant's failure to request the instruction waived the issue; and, (2) that the instruction given by the military judge sufficiently covered the issues and gave full guidance to the court members. We disagree and reverse on the basis that the facts in this case raised the affirmative defense of mistake of fact and required a *sua sponte* instruction by the trial judge on that affirmative defense.

The facts from which this sordid affair arose are as follows. The alleged victim, Patricia, the wife of a non-commissioned officer, and the appellant and his wife occupied apartments in the same building along with other military families in Oberkirchen, Federal Republic of Germany. As a consequence of their living accommodations, the parties knew each other and, along with other occupants, socialized together on occasion. During the fall of 1985, Patricia had a conversation with a female friend named Kathy in which Kathy asked whether Patricia would like to have sexual intercourse with the appellant if Kathy tried it first. Patricia responded by saying she probably would. Kathy apparently had a sexual liaison with the appellant that day

and, in all probability, informed him that Patricia desired a similar encounter. In any case, appellant invited Patricia to his quarters for a drink the following day. During their rendezvous, Patricia and appellant engaged in consensual sexual intercourse. Over the next four to five months the parties met on five to ten occasions, generally at the appellant's apartment, and engaged in sexual intercourse. In each instance, appellant would tell Patricia that he needed to talk with her or that his wife was ill and wanted to see her. On one occasion the victim went to appellant's apartment allegedly to retrieve a borrowed video tape recorder and the parties again engaged in sexual relations. Further, in March 1986, the two couples spent the evening together in Patricia's apartment. What actually occurred at this time is controverted. Appellant and his wife describe the event as a sexual encounter in which the parties traded wives and engaged in sodomy. Patricia testified that the evening's events did not occur in that manner. Suffice it to say that whatever it may have been, the meeting had sexual connotations.

Patricia described all the prior sexual episodes [2] with the appellant, other than the first, as "rape." The record, however, amply demonstrates that no meaningful force or threats were employed, although Patricia may have told the appellant, on occasion, that she did not want to commit the act. Also, Patricia apparently bragged about her sexual liaisons with the appellant in two instances to two female friends.

On the morning of 31 May 1986, the appellant desired to use the community washer and dryer but found the dryer filled with Patricia's clothes. Appellant removed the clothes, took them to the victim's apartment, and apparently knocked on the door for some time. Patricia answered the door, received her clothes, and was advised by appellant that his wife was sick and wanted to talk to her. Patricia was apprehensive about this request but decided to go to appellant's apartment. She arranged with

---

**2.** These events gave rise to the four specifications of adultery to which the appellant plead guilty.

her friend, Mrs. Weaver, to follow her. Patricia then climbed the stairs to appellant's apartment and entered. Appellant shut the door and locked it. He had music on a stereo playing loudly. Mrs. Weaver followed Patricia to appellant's door and knocked for extended length of time. Although her knock was heard by both appellant and Patricia, no one attempted to answer the door.

Appellate then led Patricia into his bedroom and started removing her shorts or panties. Patricia told appellant she had to go. He replied, "Don't worry Grace wants to see you not Mrs. Weaver." Patricia testified she told appellant "no" and attempted to pull up her panties but he removed them and laid her on the bed and unbuttoned her shirt. Appellant attempted cunnilingus on Patricia and licked her breasts prior to having intercourse with her. The record establishes that the only resistance offered by her was to say no or words equivalent to "we shouldn't do this." She also asked the appellant what Angela (Mrs. Weaver) would think. She made no efforts to resist him nor attempted to call to her friend, Mrs. Weaver, who was standing at appellant's door. She also testified she tried to get off the bed when she was at the edge as a consequence of appellant's activities. She apparently cooperated entirely when appellant moved her body to various positions on the bed and offered no resistance other than when she initially entered the apartment. Also, she claimed she was afraid of the appellant but acknowledged that appellant had been, and was, essentially gentle in his treatment of her. Finally, on cross examination, she acknowledged a statement made at the Article 32 investigation that, "In a way you could say I did it voluntarily because I just wanted to get it over with." Appellant's testimony acknowledged the sexual intercourse and stated that Patricia told him several times, "Ray, I don't think we should do this."

In a pretrial statement admitted into evidence, the appellant admitted that Patricia had repeatedly told him to stop and that she didn't think they should have intercourse. He also stated that he insisted because he was aroused and didn't care

what she wanted. Finally, among other matters, he stated he would get a feeling about women who his wife talked about and he could tell which women wanted him.

At trial, appellant testified that Patricia told him, "Ray we shouldn't do this," but he insisted and she cooperated. In cross-examination appellant stated because he knew Patricia so well, he knew her statements saying "no" and "we shouldn't do this" were in fact a part of a fantasy she was fulfilling. He interpreted her statements, as part of the fantasy, to actually mean "yes." He also believed Patricia's actions were intended to "tease" him.

During an out-of-court hearing prior to instructions the issue of defense of mistake of fact on consent was not discussed nor did the trial defense counsel request such an instruction. The trial judge gave the standard instructions on the offenses of rape and indecent assault. He did not instruct the members concerning the defense of mistake of fact.

I

Rule for Courts–Martial [hereinafter R.C.M.] 916, Manual for Courts–Martial, United States, 1984, delineates those special or affirmative defenses available by which an accused, although not denying that he committed the objective acts constituting an offense, denies responsibility for those acts. Specifically, R.C.M. 916(j) provides:

> it is a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense. If the ignorance or mistake goes to an element requiring ..., specific intent ..., or knowledge of a particular fact, the ignorance or mistake need only have existed in the mind of the accused. If the ignorance or mistake goes to any other element requiring only general intent or knowledge, the ignorance or mistake must have existed in the mind of the accused and must have been reasonable

under all the circumstances. However, if the accused's knowledge or intent is immaterial as to an element, then ignorance or mistake is not a defense. Thus, the mistake of fact defense is relevant here because, if raised, the defense would go to an essential element of both the crimes of rape and indecent assault.

 Rape, as sanctioned by Article 120, UCMJ, is a general intent crime. *United States v. Hickson,* 22 M.J. 146, 150 (C.M.A.1986); *United States v. Roa,* 12 M.J. 210, 213 (C.M.A.1982). An essential element of the crime is that the act was done by force and without the consent of the victim. The affirmative defense of mistake of fact is available in a rape case when the mistake or ignorance of fact is honest and reasonable. *United States v. Baran,* 22 M.J. 265 (C.M.A.1986); *United States v. Carr,* 18 M.J. 297 (C.M.A.1984); *see also ·United States v. Moore,* 15 M.J. 354, 367– 76 (C.M.A.1983) (Everett, C.J., dissenting). In order to raise the defense to an allegation of rape, there must be some evidence of record from which the accused could have reasonably and honestly perceived that the alleged victim consented to the act that constituted the alleged rape, *United States v. Carr,* 18 M.J. at 301, and to which the finders of fact might attach credit if they so desire. *See, United States v. Jackson,* 12 M.J. 163, 167 (C.M.A.1981); *United States v. Tan,* 43 C.M.R. 636 (A.C.M.R. 1971)

 The issue of consent is also central to the offense of indecent assault.[3] This is so because one of the essential elements of the offense is that the unlawful touching or other assault was done without the consent and against the will of the alleged victim. *See* Department of the Army Pamphlet 27– 9, The Military Judge's Benchbook, para. 3–128, p. 3–259 (May 1982).

 There is evidence from both the prosecution and defense which raises the defense of mistake of fact as to both offenses. Appellant and Patricia had known each other intimately for an extended peri-

od of time. There was virtually no evidence of physical resistance and only minimal verbal resistance. Appellant stated that he interpreted the hesitancy as a kind of "tease." Patricia made no effort to contact her friend who was waiting outside appellant's door. Finally, consideration of her statement, made at the Article 32 investigation and admitted at trial, that "you could say I did it voluntarily because I just wanted to get it over with", together with appellant's testimony and pretrial statement that he believed that when Patricia said "no" she was in fact saying "yes", *see e.g., United States v. Steele,* 43 C.M.R. 845, 849 (A.C.M.R.1971) (Finkelstein, J., concurring), convinces us the defense of mistake of fact was raised with regard to both the rape and the indecent assault specifications.

II

 R.C.M. 920(e) lists required instructions and provides as follows: "Instructions on findings *shall* include: ... (3) a description of any special defense under R.C.M. 916 in issue." Additionally, it has long been held that when an affirmative defense is raised by the evidence, the military judge is required *sua sponte* to instruct thereon. See *United States v. Stewart,* 43 C.M.R. 140 (C.M.A.1971), *United States v. Oisten,* 33 C.M.R. 188, 194 (C.M. A.1963). The military judge bears the primary responsibility for assuring the jury is properly instructed on all material issues raised by the evidence in the case. *United States v. Sawyer,* 4 M.J. 64 (C.M.A.1977); *United States v. Gaiter,* 1 M.J. 54, 56 (C.M.A.1975); *United States v. Graves,* 1 M.J. 50, 52–3 (C.M.A.1975).

 Government appellate counsel argue, however, that even if the issue of mistake of fact was raised by the evidence, the military judge's standard instructions on force and consent adequately covered the issue. They further argue because defense counsel failed to object the error was waived. *United States v. McFarlin,* 19 M.J. 790 (A.C.M.R.), *petition denied,* 20

---

3. The offense of indecent assault also requires that a specific intent be proven. The specific

intent element of proof, however, need not be addressed here.

M.J. 314 (C.M.A.1985); *United States v. McLaurin,* 22 M.J. 310 (C.M.A.1986); R.C.M. 920(f). We disagree. The standard instruction on rape which was given in this case does not address the appellant's subjective beliefs with regard to the prosecutrix's actions as to whether her manifested physical acts and oral statements were or could be honestly and reasonably perceived as consenting to sexual intercourse. Further, *McFarlin* dealt with the issue of whether, under the facts of that case, the appellant's mistake of fact was honest and reasonable. The court held that the mistake was not reasonable. In view of factual differences in the two cases, we do not deem *McFarlin* applicable here.

R.C.M. 920(f) provides, in part, that the failure to object to an instruction or to the omission of an instruction before members close to deliberate constitutes waiver of the objection in the absence of plain error. As we have noted, military law has long required *sua sponte* instructions when evidence raises special (affirmative) defense. As the United States Court of Military Appeals has held, the requirement for instructions arises from evidence in the case, not from the actions of the trial defense counsel. The passive waiver concept has been restricted to actions of the trial defense counsel which leave appellate tribunals with insufficient factual development of an issue necessary to resolve a question of law raised on appeal. Those considerations are not present when considering whether a particular instruction should have been given in a case when the record itself provides the evidence necessary to resolve the question. *United States v. Graves,* 1 M.J. at 53. In fact, in *United States v. McLaurin,* a case cited by government appellate counsel, the court noted, in applying R.C.M. 920(f) with regard to the failure of the trial court to give an evidentiary instruction on identification, that military law has required the military judge to instruct *sua sponte* on some issues: *McLaurin* 22 M.J. at 313. *See also United States v. Grandy,* 11 M.J. 270, 277 (C.M.A.1981); *United States v. Salley,* 9 M.J. 189, 192–193 (C.M.A.1980).

■ The waiver doctrine incorporated in R.C.M. 920(f) is based on the last two sentences of Federal Rule of Criminal Procedure 30 concerning instructions. The federal rule permits appellate courts to correct particularly egregious instructional errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). However, the evidence must demonstrate that the charge considered as a whole was so clearly erroneous to result in a likelihood of a grave miscarriage of justice. *United States v. Varkonyi,* 645 F.2d 453 (5th Cir.1981).

■ Here, the factual circumstances which gave rise to the affirmative defense of mistake of fact, as in *Gaiter,* were so closely interwoven with the elements of consent and force that the military judge should have recognized that the defense was raised in this closely contested case. His subsequent failure to give the mandated instruction *sua sponte,* under these circumstances, denied the appellant the right to have the court-martial consider the facts under this affirmative defense, and in effect, denied the appellant of an opportunity for acquittal. We deem the error substantial and highly prejudicial.

■ In sum, the waiver doctrine set forth in R.C.M. 920(f) is inapplicable to the circumstances here because the error here is of such consequence that it may be considered plain error.

Accordingly, the findings of guilty of the Specification of Charge I and Charge I (rape) and the Specification of Charge II and Charge II (indecent assault) are set aside. The remaining findings of guilty are affirmed.* The sentence is set aside. The same or a different convening authority may order a rehearing on the Specification of Charge I or on the Specification of Charge II, or both, and the sentence. If the convening authority determines that a rehearing on only one of the two specifica-

* Corrected

tions and the sentence is practicable, the other specification should be dismissed. If the convening authority determines that a rehearing on neither of the specifications is practicable, he may dismiss those charges and order a rehearing on the sentence alone based on the findings of guilty affirmed by this court.

Judge KANE and Judge SMITH concur.