### UNITED STATES

v.

**Airman First Class George E. HAGY, FR 408–11–5317 United States Air Force.**

### ACM 23159.

U. S. Air Force Court of Military Review.

Sentence Adjudged 20 March 1981.

Decided 25 Nov. 1981.

740

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain Willard K. Lockwood.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before MILES, KASTL and MILLER, Appellate Military Judges.

## DECISION

MILLER, Judge:

Tried by general court-martial, military judge sitting alone, the accused was convicted, partially in consonance with his pleas, of four check forgeries, three thefts, two wrongful appropriations, three housebreakings and two wrongful dispositions of government property, in violation of Articles 123, 121, 130 and 108, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 923, 921, 930, 908. His approved sentence consists of a bad conduct discharge, confinement at hard labor for three years, eight months, forfeiture of all pay and allowances, and reduction to airman basic.

Two questions merit discussion. Does *United States v. Boles*, 11 M.J. 195 (C.M.A. 1981), prevent the admission under paragraph 75*d*, Manual for Courts-Martial, 1969, (Rev.) of an otherwise legitimate entry in a personnel record, if such an entry is hurriedly processed into the record with a probable view toward its admission at trial? And, does *United States v. Bertelson*, 3 M.J. 314 (C.M.A.1977), impose an absolute obligation on a military judge to determine, *prior* to accepting a factual stipulation in a

contested case, that the stipulation itself, without further evidence, does not amount to a confession?

We answer both questions in the negative and affirm.

### I

Seven days prior to trial, the accused was a pretrial confinee at a United States Marine Corps Joint Services Correctional Facility, in Okinawa, Japan. A blue pill, suspected of being a narcotic, was discovered in his foot locker.

Three days prior to trial, the Marine Commander of the facility forwarded a draft charge and specification, alleging this illegal possession of a "narcotic drug", to the Base Commander, Kadena Air Force Base, Okinawa. Upon receipt, he apparently forwarded the package to the accused's squadron commander,[1] for it was this individual who gave a letter of reprimand (LOR) concerning the offense to the accused on the morning of trial.

As required, the accused acknowledged receipt of the LOR. Immediately thereafter, his squadron commander notified the accused that he intended to place the document in the accused's unfavorable information file (UIF). Despite accompanying advice that the accused had three work days to prepare materials he wanted considered in opposition to placing the LOR in his UIF, and/or attached to the LOR, if, in fact, it eventually was entered therein, the accused immediately acknowledged receipt of this notification, indicating no desire to submit any such materials.

The squadron commander then forwarded the LOR to the consolidated base personnel office, requesting it be added to the accused's UIF. When, on the second day of trial, the government introduced the LOR, it bore a certification, executed by the custodian of the accused's UIF, indicating that it had been extracted therefrom.

Appellate defense counsel contend that these facts, when combined with the squad-

---

1. Within the Air Force, reports of disciplinary infractions are ordinarily forwarded to an offender's squadron commander for action that commander deems appropriate.

ron commander's presumed knowledge that an LOR contained in a UIF is ordinarily admissible for sentencing purposes at trial, establish a "hurried" processing of the instant LOR precluded by *United States v. Boles, supra,* and *United States v. Dodds,* 11 M.J. 520 (A.F.C.M.R.1981).

Our reading of these two cases, reveals no such bar.

In *United States v. Boles, supra,* the squadron commander ordered an LOR placed into the accused's UIF five days before trial. The LOR concerned an off-base, off-duty fire bombing for which the accused was still pending civilian trial. The reprimand stated that 16 days prior to trial the accused willfully and maliciously threw a "molotov cocktail," setting fire to a civilian's house door and automobile. Additionally, a confession, purportedly authored by the accused, was incorporated into the LOR by attachment. Government counsel, when proffering this LOR at trial, conceded that the squadron commander's sole purpose, both in issuing and entering it into the

accused's UIF, was to render the information contained therein admissible at trial.

On appeal, it was argued: (a), that the purpose conceded by government trial counsel was a valid one for issuing an LOR under Paragraph 19a, Air Force Regulation 35–32, Unfavorable Information Files (UIFs), Control Rosters, Administrative Reprimands and Admonitions, (22 September 1975);[2] and, (b), that following entry of such an LOR into a UIF under paragraph 5a(7), AFR 35–32,[3] it became admissible in courts-martial under Paragraph 75d, MCM, *supra,*[4]. The Court recognized that were such an argument meritorious, then the provisions of AFR 35–32 would provide Air Force commanders with a vehicle for circumventing the clearly intended prohibitions of Article 37, UCMJ.[5]

The Court noted the purpose of paragraph 75d, MCM, which is to permit members of a trial court faced with sentencing decisions to consider records of past conduct and duty performance legitimately retained for similar administrative decisions within Air Force personnel records. Then it rea-

2. This section deals with the definition, authority, purpose, and procedural processing of administrative reprimands and admonitions. It is not intended to constrain the discretionary authority or flexibility of commanders and supervisors, but to facilitate a clearer understanding of the nature and use of administrative reprimands and admonitions.
Paragraph 19a, Air Force Regulation 35–32, Unfavorable Information Files (UIFs), Control Rosters, Administrative Reprimands and Admonitions, 22 September 1975.

3. 5. Contents of UIFs: a. UIFs may include, but are not limited to, the AF Form 1137, and correspondence or documentation as determined appropriate for file by the member's immediate commander or higher authority, that substantiates or records: ... (7) A copy of an administrative letter of reprimand or admonition not pursuant to Article 15, UCMJ or court-martial.
Paragraph 5a(7), AFR 35–32.

4. *"Optional matter presented when court-martial constituted with military judge.* Under regulations of the Secretary concerned the trial counsel may, prior to sentencing, obtain and present to the military judge any personnel records of the accused or copies or summaries thereof. Summaries of such records will be prepared and authenticated by the custodian thereof as provided in appendix 8g.

Personnel records of the accused include all those records made or maintained in accordance with departmental regulations which reflect the past conduct and performance of the accused. If the accused objects to the data as being inaccurate or incomplete in a specified material particular, or as containing certain specified objectionable matter, the military judge shall determine the matter. Objections not asserted will be regarded as waived. The accused may submit in rebuttal any matter which reflects on his past conduct and performance. In cases where members determine sentence, the military judge may admit for their consideration any information from these records which reflects the past conduct and performance of the accused. [Emphasis in original.]
Paragraph 75d, Manual for Courts-Martial, 1969, (Rev.)

5. ... No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts ...
Article 37, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 837.

soned that if AFR 35–32 was, in fact, so broad as to allow a commander to freely place any facts, innuendos, or personal opinions he desired before sitting court members, then its provisions permitted the entry of matters into personnel records never contemplated by paragraph 75d, MCM, and the admission of which would directly conflict with the prohibitions of Article 37, UCMJ.

Following a detailed analysis of AFR 35–32, the Court concluded that such an argument was meritless because it presented paragraph 19, AFR 35–32, out of context.

Read in context, the commander's discretion to issue LORs under paragraph 19 is limited, both by the restricted purpose for which LORs may be issued, enunciated in paragraph 22,[6] and by restrictions preventing the issuance of LORs for offenses warranting punitive action, contained in paragraphs 20 and 21.[7]

█ The fact that paragraph 5a contains a specific section, 5a(3), designed for inclusion of documentation pertaining to civilian offenses warranting punitive punishment within a UIF, reinforces the Court's conclusion that under AFR 35–32, such offenses are not properly the subject of an LOR.[8]

Consequently, the Court held:

> ... *for purposes of paragraph 75d, Manual, supra,* ... this commanding officer's reprimand of the appellant for alleged civilian misconduct did not comport with regulations which define the administrative reprimand properly included in a UIF under paragraph 5a(7). Accordingly, it should not have been admitted at

---

6. *Purpose of Administrative Reprimands and Admonitions.* The judicious use of administrative reprimands and admonitions renders them an effective management device to assist in maintaining Air Force standards and accomplishing the Air Force mission. Commanders and supervisors at all levels have the inherent authority to ensure that their subordinates maintain the highest standards of performance, conduct and bearing. Deviations from established standards may be brought to the attention of the individual in the form of an administrative reprimand or admonition as a method of correction to ensure maintenance of those standards and accomplishment of that mission.
Paragraph 22, AFR 35–32.

7. *Definition.* Administrative reprimands and admonitions are management tools available to commanders, supervisors, and other superiors to reprove and instruct subordinates for departing from acceptable norms of performance, conduct, or bearing. They are either verbal or written, as deemed appropriate to correct the identified deficiency. If written, no required format is prescribed. A reprimand is more severe than an admonition and carries a strong implication of official censure.
Paragraph 20, AFR 35–32.
*Authority.* The use of administrative reprimands or admonitions by commanders and supervisors in the exercise of their supervisory authority and responsibility, is a responsibility utilized and existing since the very inception of our military force. It is a function of the superior and subordinate relationship. There is no statutory basis for administrative reprimands and admonitions, and they should not be confused with punitive

reprimands and admonitions administered as a consequence of either court-martial conviction, or acceptance of nonjudicial (Article 15, UCMJ) punishment. Instead, the authority for using administrative reprimands and admonitions derives from the inherent authority and responsibility of a commander or supervisor to correct and train those under his or her command and supervision.
Paragraph 21, AFR 35–32.

8. Civil law infractions. This includes but is not limited to, civil court convictions or judgements tantamount to a finding of guilty which are not mandatory for file in the UIF (see paragraph 5b(2) for mandatory filing requirements).
Paragraph 5a(3), AFR 35–32, Interim Change 79–2, dated 28 December 1979.
Civil court convictions (foreign or domestic), or actions taken which are tantamount to a finding of guilty, of an offense for which the maximum penalty under the UCMJ is death, or confinement for one year or more; or which involved moral turpitude. If the offense is not listed in the Manual for Courts Martial (MCM) table of maximum punishments or is not closely related to an offense listed in it, the maximum punishments authorized by the US Code or the District of Columbia Code whichever is lesser, applies. For the purpose of determining whether a civil action involving "moral turpitude" must be filed in the UIF, or an action is "tantamount" to a finding of guilty, refer to the definition and discussion in AFM 39–12.
Paragraph 5b(2), AFR 35–32, Interim Change 79–2.

the court-martial under paragraph 75d, Manual, *supra*. [Emphasis in original.] *United States v. Boles, supra*, at 198.

In *United States v. Dodds, supra*, shortly before trial, the accused's commander issued him an LOR for speeding. The LOR had been processed into the accused's UIF and introduced at trial. Our Court, operating without benefit of *Boles, supra*, held that, although the LOR for speeding would, otherwise, have been admissible, the fact that it included references to eleven earlier incidents of uncharged misconduct, rendered it inadmissible. We reasoned that the only plausible purpose for including citations to these eleven earlier incidents of misconduct was to render them admissible as matters in aggravation at trial. Based upon existing precedents, we noted that mere existence in a UIF does not necessarily mean an entry is admissible in a court-martial, and we held that the military judge failed to exercise sound discretion in admitting all the materials contained in the LOR.

■ Despite the difference in phraseology used in these two cases, it is obvious that both created essentially the same "rule", to prevent the same "evil". Absent a legitimate "correction" or "management tool" function contemplated by AFR 35–32, LORs entered into a UIF are not properly personnel records admissible in courts-martial under paragraph 75d, MCM.

Thus, commanders may not misuse AFR 35–32, as a "backdoor" means of putting clearly inadmissible matters before courts-martial.

■ Applying this rule to the facts at bar, we are convinced the UIF entry was admissible.

Under the instant circumstances, immediate "corrective" action was clearly appropriate when a single blue narcotic pill was found in the accused's footlocker at the facility in which he was held in pretrial confinement. Such action was an effective means to immediately emphasize that disregard of confinement regulations, even those prohibiting the personal possession of prescription drugs, would not be tolerated.

On the other hand, under circumstances indicating that his footlocker was located in an open bay type barracks shared by other confinees (both pre- and post-trial) and that he had never abused drugs before, Article 15, UCMJ, or court-martial punishment could hardly have been justified. While the commander was undoubtedly convinced by a preponderance of the evidence that the accused wrongfully possessed a narcotic, it is apparent that additional investigation would have been required to prove this possession beyond a reasonable doubt.

Likewise, while this event, itself, was perhaps *de minimus*, it, nevertheless, makes very good sense from a force management perspective to reflect it in the accused's personnel records. First incidents involving drugs frequently develop into the first of a series of incidents, which, when faithfully recorded, might establish an individual to be a consistent drug abuser. Consequently, such entries serve as a logical management tool by which potential repeat drug abusers may be identified; they constitute a legitimate part of Air Force personnel records.

Here, the accused's commander acted properly when he took corrective action in this case. Whether or not he acted *extra* swiftly to insure the LOR reached the UIF in time for trial, the entry was a legitimate part of an official Air Force personnel record at the time of trial. As such, it was properly admitted under paragraph 75d, MCM, as an aggravating matter pertinent to sentencing. Moreover, since nothing in the record suggests that the material contained in the LOR was, on balance, unfair to the accused, we do not find that the military judge's admission of it constituted an abuse of his discretion.[9]

II

Turning our attention to the *Bertelson, supra,* issue, we note convictions on three larceny specifications to which the accused pled not guilty, but guilty to the lesser included offense of wrongful appropriation.

9. *United States v. Dodds*, 11 M.J. 520 (A.F.C.M. R.1981).

During plea inquiry, the military judge admitted a stipulation of fact that proved each and every element of these lesser included offenses. Additionally, the stipulation indicated that shortly after the accused wrongfully appropriated the allegedly stolen items, he sold them to a pawn shop. Following this stipulation's admission into evidence, the accused testified that, despite his subsequent recognition that this pawnshop transaction had actually amounted to a sale, he intended at the time he engaged in that transaction to redeem the items and return them to their owner.

Undeniably, the subsequent sale of a wrongfully appropriated item by its taker establishes a rebuttable inference that the item was taken with the intent to permanently deprive its owner of rightful possession of such an item. Because such an intent to "permanently" deprive happens to be the sole element necessary to convert a wrongful appropriation into a larceny, the instant stipulation, in addition to constituting an admission by the accused to wrongful appropriation, also amounted to a *prima facie* admission of the larceny specifications to which he had pled not guilty.

Appellate defense, citing *United States v. Bertelson, supra*, contends that, by definition, such a factual stipulation constitutes a confessional stipulation. *Bertelson, supra*, at 315, note 2. They then argue that these three specifications must be set aside because the military judge failed:

> ... to expressly communicate to the appellant before accepting his confessional stipulation that under the Manual it could not be accepted without his consent ... (to) ascertain from the accused on the record that a factual basis exists for the stipulation ... (and to) conduct a plea bargain inquiry ...

*United States v. Bertelson, supra*, at 316. We reject these arguments.

The *Bertelson* mandate must not be confused with that of *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). Under *Care, supra*, a military judge's failure to expressly inquire into the providency of any guilty plea *prior* to accepting it constitutes error. If, at the conclusion of trial, any evidence inconsistent with the accused's guilt exists in the record, the conviction may not stand. Under *Bertelson, supra*, a military judge's failure to expressly inquire into the providency of confessional stipulations, does not constitute error until the accused, *having finally rested his case prior to findings*, has failed to produce any evidence, which while consistent with the facts of any previously admitted factual stipulations is, nevertheless, inconsistent with any *prima facie* admissions of guilt contained therein. It is only then that such factual stipulations actually become tantamount to confessions of guilt (i.e., confessional stipulations).[10]

The apparent reason for such a distinction is that the offer of a guilty plea represents a conscious choice by the accused not to contest any issues relevant to his guilt. It clearly contemplates an immediate announcement of a guilty verdict without the introduction of any evidence. A factual stipulation, on the other hand, is actually an anticipation on the part of all parties that additional evidence contradicting guilt will be admitted into trial prior to findings. Factual stipulations ordinarily reflect such anticipations for two reasons. They either stem from the desire of both parties to separate agreed-upon facts from contested ones so as to insure evidence directly relevant to contested issues is clearly delineated for the fact finder, or they indicate the accused's intent to plead guilty "but for" his desire to preserve contested interlocutory issues for review.

The Court of Military Appeals specifically recognized this distinction when it first issued its *Bertelson* mandate, stating that even when, as in that case:

> that amounts to an admission of those inculpatory facts necessary for a conviction. Only by so doing can he eliminate the latent potential for error that exists in any factual stipulation.

10. *Caveat*: Regardless of the technical rationale of *United States v. Bertelson*, 3 M.J. 314 (C.M.A.1977), prudent military judges should in every case conduct a Bertelson inquiry prior to accepting any factual stipulation into evidence

746

... the appellant had stipulated to the truth of every inculpatory fact charged against him... (if) the appellant ... (had) presented the defense of entrapment ... (it) would have required us to review this issue in a different light. However, because he did not present that defense, his stipulation admitted every essential fact *and* amounted to a confession of guilt. (emphasis added)

*United States v. Bertelson, supra*, at 315.

■ The logical conclusion to be drawn from this pronouncement is that even when a factual stipulation expressly admits every element of an offense to which the accused has pled not guilty, it does not become a confessional stipulation until the accused, having failed to set forth any affirmative defense, finally rests his case. Certainly a factual stipulation that does not admit every element of an offense to which the accused has pled guilty, unless and until the fact finder draws an inference with respect to an essential element of that offense, does not become a confessional stipulation any sooner.

Applying this rationale to the case at bar, we find that the military judge's failure to conduct a *Bertelson* inquiry into the instant stipulation of fact, did not constitute error because prior to findings the accused produced evidence that was both consistent with the factual stipulation, and inconsistent with an admission of guilt to the contested charges. Even though the factual stipulation in this case admitted every inculpatory fact necessary to convict the accused of the three larceny offenses to which he pled not guilty, it did not, *at the time of findings*, amount to a confession of guilt as to any of these offenses. Ergo, it was not a confessional stipulation.

Accordingly, the approved findings of guilty and sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

KASTL, Judge, concurs.

MILES, Senior Judge (dissenting in part):

On the confessional stipulation issue, I agree with the result reached by the majority opinion which disposes of this issue adversely to the accused. However, I disagree with their holding that the letter of reprimand was admissible under the facts of this case.

On the first day of trial, the accused's commander reprimanded him for the alleged possession of contraband several days earlier while in pretrial confinement. After the accused acknowledged receipt, the commander forwarded the letter of reprimand to the base personnel office. All of these actions were taken without the knowledge of accused's trial defense counsel, although notice to defense counsel is not strictly required for letters of reprimand. Before noon the next day, the trial prosecutor offered into evidence Prosecution Exhibit 13, a copy of this letter of reprimand duly extracted from the accused's personnel records. Despite a defense objection, the military judge accepted this exhibit. The correctness of that ruling is the precise issue we decide today.

Under these facts, I conclude that this reprimand was given to the accused in order to influence the sentencing process before the court-martial. In the normal course of events, a letter of reprimand is not given to an accused, receipted for by him, forwarded to a consolidated base personnel office, entered into his records and then extracted therefrom—all within 24 to 30 hours—without very expeditious processing. This is particularly true on a large installation such as Kadena Air Base, Okinawa, the situs of these events. The commander's purpose is further supported by the lack of notice to the accused's trial defense counsel—who could be expected to delay the entry of the letter of reprimand into the accused's record by suggesting that the accused exercise his three day option before responding.

Since the letter of reprimand was given in order to influence the sentencing process, *United States v. Boles*, 11 M.J. 195 (C.M.A.

1981) requires that it be excluded from evidence. In that case, the Court of Military Appeals stated:

> [W]e conclude the defense has shown that this reprimand was issued by the commanding officer and placed in his UIF for the purpose of influencing the appellant's present court-martial. The question before this court is whether such action comports with the regulation concerning administrative reprimands. We conclude it does not. [Citations omitted.]

*United States v. Boles,* 11 M.J. 195 at 199.

Having concluded that *United States v. Boles, supra,* requires that the letter of reprimand be excluded, I would reassess the sentence.