UNITED STATES

v.

**Airman Keith BEAVER, FR 198–62–2317, United States Air Force.**

**ACM 26686.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 8 Jan. 1988.

Decided 11 Aug. 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major William J. Reichart.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Lieutenant Colonel Morris A. Tanner, Jr. and Lieutenant Colonel Robert J. Webster, USAFR.

Before HODGSON, FORAY and EHRENHAFT, Appellate Military Judges.

## DECISION

EHRENHAFT, Judge:

Within a month of reporting for his first duty assignment, Airman Keith Beaver began to manifest the behavior that resulted in his eventual conviction by a general court-martial of burglary, larceny, destruction of government property, unlawful entry and assault. Twenty years old, below the legal drinking age in California where he was stationed, he consistently obtained alcohol and consumed it to excess. Under the influence he was violent; under the influence he broke the law. His drinking led his commander to order his pre-trial confinement; yet, the accused even obtained alcohol while jailed.

Appellate defense counsel cite five errors:

First, that the Military Judge failed to give a requested instruction on what the defense claimed was the "prior inconsistent identification" of the accused by a key government witness. The witness, a young, white, female airman, was the victim of the accused's burglary, larceny and unlawful entry. In describing to the OSI within a few hours of the unannounced and uninvited nighttime entry into her dormitory room of a black man, she stated (in writing, subsequently sworn) that the intruder was 5'9" tall, weighed 190 pounds and gave his name as "Keith." At his trial, over nine months later, the witness identified accused as the intruder, although he is 6'3" tall and weighs over 210 pounds.

His friends claimed he uses the name "Philly." The Military Judge permitted trial defense counsel to call the issue to the court's attention in his opening argument, to cross examine the victim at length concerning her description of the accused, and to argue to the members in closing that her testimony and in-court identification of accused were not believable in light of her earlier sworn statement. The judge also instructed the court that the government had the burden of proving identity beyond a reasonable doubt, that identification testimony depends on the opportunity of the witness to observe, and that the members should consider a witness' subsequent identifications in light of the passage of time and other factors. The judge declined to give a defense-proffered instruction, calling this issue the "most important" in the case and highlighting the "inconsistency" with the in-court identification. He viewed this as a comparison of "apples and oranges" that required no special instruction.

 The military judge did not err. The witness' prior description was not an "identification," a term reserved in the law for a *selection* of an individual (or his picture, for example) from among a group in a lineup or a random gathering. *See United States v. McLaurin*, 22 M.J. 310, 313 (C.M.A.1986). While an identification may also be a statement, or be accompanied by a statement, it is not the narrative specification of features that is embraced by a "description" of a person. Inconsistent statements may undermine credibility, and the witness' prior description apparently differing from accused's appearance before the court when identified by the witness could be—and was—considered. No further instruction on the point was required, nor would it have been proper to regard this issue as the "most important" placed before the members.[1]

 The second assignment claims prejudice to the accused arising out of the

admission into evidence at sentencing of a Letter of Reprimand (LOR), prepared by the accused's commander six days before trial, and relating primarily to a series of underage drinking episodes resulting in drunk and disorderly behavior. Some of these episodes occurred months previously. Defense counsel claims the LOR was hastily prepared to enable the government to put before the court uncharged misconduct in service of the type admissible for sentencing purposes pursuant to RCM 1001(b)(2), and MRE 803(6). Such a practice was condemned by the Court of Military Appeals in *United States v. Boles*, 11 M.J. 195 (C.M.A.1981). Counsel also suggest that LOR's must serve a "rehabilitative function" and, in this case, in which the accused's commander knew accused was to stand trial by general court-martial in a matter of days and testified at trial he believed accused had no rehabilitative potential, the letter could serve no purpose other than provide a back door evasion of MRE 404(b), generally excluding evidence of uncharged prior misconduct.

We disagree. The LOR was properly prepared regarding accused's actions which the commander did not regard as appropriate for non-judicial punishment or preferral of charges. At the time the LOR was written, the commander did not know whether accused would plead or be found guilty of any offenses for which he was to be tried; nor was the LOR "rushed into the record" immediately before or during the trial. All of the indicia of normal record creation and maintenance appear to have been followed, even if the delay between the first of a series of related acts of misconduct occurred months before the letter was written. We find the issue controlled by our decision in *United States v. Hagy*, 12 M.J. 739 (A.F.C.M.R.1981) and find no error.

 The third error alleged is that the accused's burglary and larceny were multi-

1. Appellate defense counsel cites *United States v. Powell*, 22 M.J. 141 (C.M.A.1986), discussing the law of the exception to the heresay rule permitting the introduction of prior inconsistent statements under Mil.R.Evid. 803(2). However, here, no issue of *admissibility* of the prior statement was raised; the dispute concerned its characterization. Thus, we do not regard the teachings of *United States v. Powell* relevant. *United States v. McLaurin*, 22 M.J. 310 (C.M.A. 1986) is more on point, but turned on true "identifications" in photo lineups and at trial in a case in which that issue was conceded to be "a primary issue." 22 M.J. at 312.

plicious for sentencing purposes, because the purpose of the burglary of the victim's room was the theft of her property. However, the law is clear that under these facts, the different elements of the two offenses create separate offenses, each separately triable and punishable. This is not a situation, such as we considered in *United States v. Niedzielski*, 24 M.J. 608 (A.F.C.M.R.1987), in which the signing of stolen checks with a forged signature was the very means by which the writer obtained the proceeds of the account on which the checks were drawn. There, we held the proven elements of a single offense (for sentencing purposes) existed. No similar relation exists in this case between the nighttime forcible entry and the subsequent larceny.

■ The fourth error alleged relates to the failure of the military judge to grant the accused additional credit for 99 days of pre-trial confinement. The accused was ordered into pre-trial confinement on 5 October, a day following another episode of drinking in violation of local law and a direct order to refrain. A hearing was ordered, and as hearing magistrate a reserve judge advocate, performing a few days of inactive duty training (IDT), was selected. The reservist performed the required duties properly insofar as the records of the hearing before him appear as an appellate exhibit to the record. However, defense counsel at trial claimed that para. 3–24c, Air Force Regulation 111–1, Military Justice Guide (Aug 84), prohibits the appointment as magistrates of judge advocate personnel assigned to the office of the Staff Judge Advocate to the convening authority. The military judge correctly noted that the regulation states only that such officers "should not" serve as magistrates; a *prohibition* applies only to a judge advocate with a "law enforcement function." In this case, the convening authority was the commander of a numbered Air Force at another base. However, the SJA at the base where accused was stationed and tried was involved in the preparation and preferral of the charges and

advised the accused's immediate commander.[2] For the purposes of AFR 111–1, we believe the base level office of the SJA is a part of the convening authority's legal advisory structure.

■ However, that does not answer the question of whether the same rules applicable to active duty judge advocates should also apply to a reservist happenstantially serving a day of IDT in that SJA's office. At the trial, confusion arose concerning the basis on which a reserve judge advocate performs IDT's. Most ready reserve judge advocates are assigned to a squadron at the Air Reserve Personnel Center in Denver, CO, but such assignment is solely for records maintenance and management. Para. 2d, Air Force Regulation 45–2, Training of Reserve of the Air Force Judge Advocates (Feb 79). For required annual training tours of *active* duty, reservists are "assigned" to the legal office of an organization at a base somewhere within the Continental United States, a senior officer of which serves as the reservist's rating officer for annual Officer Effectiveness Reports (OER's). *See* para. 2–3, Air Force Regulation 36–10, Officers Evaluations (Apr 80) (applicable prior to 1 Aug 88). At the same time, most reservists may be "attached" for *inactive* duty training (for periods as brief as four hours) to other organizations, at bases nearer to their homes. A senior officer at the organization at which such IDT's are performed is then encouraged to submit to the reservist's rater for OER purposes a Letter of Evaluation (LOE), AF Form 707, to enable the rater to report on the reservist's total annual performance of reserve duty. (An LOE would not be used in the situation in which IDT's and active duty tours are performed in the same office.) Rule A, Table 4–7, AFR 36–10 (Apr 80). And *see* para. 5–12, The Judge Advocate General's Reserve Program and Policies (22 Apr 83). Thus, in the instant case, the SJA of the base at which the reservist performed IDT would either report on the performance of the officer he selected to serve as a magistrate, or rate him directly, a point not clearly made at the trial.

---

2. He also was the SJA to the commander of the 831st Combat Support Group, the unit to which

the reserve judge advocate was "assigned" for training. (Tr. 367).

Reserve judge advocates are intended to be a part of the "total force" of the Air Force and the Judge Advocate General's Department. Para. 1, AFR 45–2 (Feb 79). Their use as magistrates, as counsel and even judges in the military justice system would appear desirable for their training and their maintenance of skills needed if called to active duty. Thus, reservists performing IDT are officially encouraged to integrate into the day-to-day activities of the offices at which they perform IDT's for "on-the-job-training." Para. 3a, AFR 45–2 (Feb 79). But if they are a true part of the "total force" of an SJA's office, they lack the appearance of independence from the official responsibilities—including law enforcement—of that office of their active duty counterparts, and, therefore, "should not" be used as magistrates for hearing matters involving personnel that office is involved in prosecuting. Absent good reason to select such a reservist to serve—and none was mentioned in the record—we believe the need for the appearance of impartiality compels us to regard the use of the reservist in this case as improper.

Accordingly, the accused is to be granted an additional credit for the number of days between 5 Oct 87, the date of the accused's confinement, and his sentence, adjudged on 8 Jan 88, which we calculate as 95 days.

In light of our disposition of the fourth assignment, we need not consider appellant's fifth assignment, related to the adequacy of the *reasons* for the accused's confinement ordered on 5 October. With regard to a three-day period of confinement in September, we find no error in the commander's order and the judge's decision not to grant additional credit.

Accordingly the findings of guilty and the sentence are

AFFIRMED.

Chief Judge HODGSON and Senior Judge FORAY concur.