# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

**UNITED STATES**

**v.**

**Technical Sergeant DONNELL E. FREEMAN**
**United States Air Force**

**ACM 38494**

**23 March 2015**

Sentence adjudged 29 August 2013 by GCM convened at Osan Air Base, Republic of Korea. Military Judge: Dawn Eflein.

Approved Sentence: Bad-conduct discharge, confinement for 6 months, and reduction to E-4.

Appellate Counsel for the Appellant: Captain Jeffrey A. Davis.

Appellate Counsel for the United States: Major Roberto Ramirez; Captain Matthew J. Neil; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and MITCHELL
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.
.

HECKER, Senior Judge:

Following arraignment before a general court-martial, the appellant entered mixed pleas. The military judge accepted his pleas of guilty to making a false official statement and larceny, in violation of Articles 107 and 121, UCMJ, 10 U.S.C. §§ 907, 921. Contrary to his pleas, a panel of officer and enlisted members convicted the appellant of failure to pay a just debt in violation of Article 134, UCMJ, 10 U.S.C. § 934. The members sentenced him to a bad-conduct discharge, confinement for 6 months, and reduction to E-4. The convening authority approved the sentence as adjudged.

On appeal, the appellant contends (1) the evidence is legally and factually insufficient to sustain his conviction for failing to pay a just debt, (2) the military judge abused her discretion in admitting certain exhibits in sentencing, and (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), his sentence is inappropriately severe.[1] Finding no material prejudice to a substantial right of the appellant, we affirm.

*Background*

The appellant was assigned to Osan Air Base in November 2007. After he married in June 2011, the appellant completed an Air Force Form 1561, *Statement to Substantiate Payment of Family Separation Allowance*, on which he stated his wife was residing in the Philippines. Because he was living away from his spouse, the appellant was entitled to a monthly family separation allowance (FSA). At a later point, the appellant's wife moved to Korea to live with the appellant, but he failed to notify the Air Force of this change in his dependent's status and thus received FSA he was not entitled to. For this misconduct, the appellant pled guilty to larceny of military property of a value more than $500. In sentencing, the Government presented evidence indicating this overpayment in FSA totaled over $4,000.

In June 2012, the appellant completed an Air Force Form 594; *Application and Authorization to Start, Stop, or Change Basic Allowance for Quarters, or Dependency Redetermination*, at the Osan Air Base housing office. The appellant falsely listed his wife as living at a particular address in the Philippines so he would be entitled to receive an overseas housing allowance (OHA) for her rental expenses at that residence, when she did not ever live at that address and did not have a legitimate lease for the property. As a result of his false official statement, the appellant received this Philippines-based OHA between June and October 2012. For this misconduct, the appellant pled guilty to making a false official statement and larceny of military property (OHA) of a value more than $500. In sentencing, the Government presented evidence indicating this overpayment in OHA totaled over $11,000.

The appellant pled not guilty to dishonorably failing to pay a just debt, violating a lawful order from his commander to reside in a base dormitory, and dereliction of duty for failing to notify his commander that his wife had moved to Korea. Following a litigated trial, the appellant was convicted of failing to pay a just debt but was acquitted of the other two specifications.

---

[1] The appellant also contended his guilty pleas to larceny of military property, specifically basic allowance for housing, was improvident, relying on this court's decision in *United States v. Hall*, 73 M.J. 645 (A.F. Ct. Crim. App. 2014). Since the filing of the appellant's brief, this court reconsidered the holding in that case and found it to be in error. *United States v. Hall*, 74 M.J. 525 (A.F. Ct. Crim. App. 2014). Accordingly, the appellant's pleas are provident.

The appellant rented an apartment from a Korean national between 2008 and 2012. His final lease covered November 2011 to November 2012. By the end of October 2012, the appellant owed the landlord for 8 months' rent on this lease, totaling approximately $10,800. The specification alleged this amount became due and payable on 26 October 2012 (the date the appellant moved out of his apartment[2]) and that the appellant dishonorably failed to pay that debt through 27 February 2013 (the date before charges were preferred). The appellant contends the evidence is factually and legally insufficient to sustain this conviction because the Government did not present sufficient proof to establish his lack of payment was "dishonorable."

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

"The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *Tuner*, 25 M.J. at 324) (internal quotation marks omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

For a military member's failure to pay a debt to be "dishonorable," there must be "more than negligence" in his nonpayment. *Manual for Courts-Martial, United States*, Part IV, ¶ 71(c) (2012 ed.). Instead, as the panel was instructed:

> The failure to pay the debt must have been the result of
> more than mere negligence; that is, the absence of due care.
> The failure to pay must be dishonorable. "Dishonorable"

---

[2] By this time, the appellant's first sergeant and commander were aware of his delinquency based on calls the unit had received from the landlord and his agents. The commander ordered the appellant to move into a dormitory on base, effective 25 October 2012. The appellant was acquitted of violating this order on divers occasions between that date and 19 February 2013.

means that the accused must have had a criminal state of mind.

> By way of example, a failure to pay is "dishonorable" if it is fraudulent; deceitful; a willful evasion; in bad faith; deliberate; based on false promises; or results from a grossly indifferent attitude toward one's just obligations.

The agent for the appellant's landlord testified about the appellant's failure to pay his rent during the pendency of his final lease. He described phone calls and visits he made to the appellant, in an unsuccessful effort to get the appellant to pay. The landlord's father also testified about his visits with the appellant, his conversations with the appellant's chain of command, and his efforts to use an attorney to recover the debt.

After the appellant moved out, the landlord entered into a repayment schedule with the appellant on 12 December 2012. Through a promissory note, the appellant agreed to pay a smaller amount—approximately $700 twice a month—until the debt was repaid. He made only one such payment in December 2012 and, as of the time of trial, had not repaid any of the remaining debt.

We find the appellant's failure to pay this debt was dishonorable. The evidence presented at trial indicates the appellant was grossly indifferent about his obligation to repay this debt after the lease ended in October 2012 and deliberately failed to repay the debt. As revealed by the appellant's leave and earnings statements, the appellant received OHA to cover his rental expense between November 2011 and October 2012 but did not use that money to pay his rent, either during the pendency of his lease or when the lease terminated. He entered into an agreement in December 2012 to pay the arrears but only made one payment. His bank records between May 2012 and November 2012 showed a significant amount of money being deposited into his bank account and many cash withdrawals and other expenditures, indicating he had the ability to apply funds towards his rental debt but deliberately chose not to do so. Furthermore, the appellant's first sergeant observed him buying drinks for a large number of people in December 2012.

Under the facts of this case, and considering the record as a whole, we find beyond a reasonable doubt that the appellant's failure to pay his debt was dishonorable and that he is guilty of this offense. A reasonable factfinder also could have found all the essential elements beyond a reasonable doubt.

*Admission of Sentencing Evidence*

During sentencing, the Government offered three letters of reprimand issued to the appellant on 12 August 2013, seven weeks after his arraignment and approximately two

weeks before the start of his court-martial. The three letters of reprimand were for: (1) dishonorably failing to pay a debt (his military Star Card credit card) between 1 February 2013 and 22 July 2013, (2) willfully violating his commander's order to reside in base housing between 7 May 2013 and 12 August 2013, and (3) violating the ration control program in April 2013 for the third time by exceeding his alcohol ration. The appellant acknowledged receipt for the letters on 16 August 2013 and indicated he did not intend to submit a response.

The defense objected to these documents, arguing they had been prepared and served together just before his trial for the sole purpose of becoming sentencing exhibits. The military judge admitted the evidence, finding these documents were within the appellant's personnel records and advising defense counsel she could address her concerns by calling the commander and attempting to impeach him on the propriety of administering the letters. Trial defense counsel did not call the commander or comment on this issue during her sentencing argument.

The appellant argues the military judge abused her discretion by admitting the documents under Rule for Courts-Martial (R.C.M.) 1001(b) since they were not relevant to his rehabilitative potential (given the date they were served) and thus did not meet the requirement for admission under that rule. He further argues that even if such evidence is relevant, it should have been excluded pursuant to Mil. R. Evid. 403.

We review a military judge's decision to admit sentencing evidence for an abuse of discretion. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000). Sentencing evidence is subject to the requirements of Mil. R. Evid. 403. *See United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995). When a military judge conducts a proper balancing test, the military judge enjoys "wide discretion" and the ruling will not be overturned unless there is a clear abuse of discretion. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (quoting *United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995)) (internal quotation marks omitted). However, we give military judges less deference if the balancing test is not on the record, and no deference if a Mil. R. Evid. 403 balancing test is not conducted. *Id.*; *see also United States v. Pope*, 69 M.J. 328, 333 (C.A.A.F. 2011).

Under R.C.M. 1001(b)(2), the Government may introduce personal data and information pertaining to the character of the accused's prior service. This rule provides as follows:

> *Under regulations of the Secretary concerned*, trial counsel may obtain and introduce from the personnel records of the accused evidence of the accused's . . . character of prior service. Such evidence includes copies of reports reflecting the past military efficiency, conduct, performance, and

> history of the accused and evidence of any disciplinary actions including punishments under Article 15[, UCMJ].
>
> "Personnel records of the accused" includes any records made or maintained in accordance with departmental regulations that reflect the past military efficiency, conduct, performance, and history of the accused.

(Emphasis added).

In the Air Force, the "regulation[] of the Secretary concerned" is Air Force Instruction (AFI) 51-201, *Administration of Military Justice* (6 June 2013). *See United States v. Sheridan*, 43 M.J. 682, 685 (A.F. Ct. Crim. App. 1995). In pertinent part, AFI 51-201, ¶ 8.13.1, states "relevant material" from an accused's unit personnel information file may be admitted if the defense is provided a copy prior to trial and if the document indicates the accused had the opportunity to respond to the allegation in the document.

Applying these requirements to the documents at issue here, we find these three exhibits facially complied with the regulation of the Secretary concerned, and the appellant does not disagree. Instead, the appellant argues the timing of these letters of reprimand leads to the conclusion that the intent of the letters was punitive rather than corrective, which renders them inadmissible as disciplinary documents.

Letters of reprimand are tools for commanders to "improve, correct, and instruct subordinates who depart from standards of performance, conduct, bearing, and integrity, on or off duty, and whose actions degrade the individual and unit's mission." AFI 36-2907, *Unfavorable Information File*, ¶ 3.1 (17 June 2005). To be admitted into evidence, such documents must perform a legitimate "corrective" (as opposed to a punitive) purpose and be intended as a "management tool" and not as a means to influence the outcome of a court-martial. *United States v. Boles*, 11 M.J. 195, 198–99 (C.M.A. 1981) (holding admission of reprimand improper where trial counsel acknowledged letter of reprimand for fire-bombing was placed in the accused's personnel records for the purpose of aggravating his larceny case); *United States v. Williams*, 27 M.J. 529, 530 (A.F.C.M.R. 1988) (holding letter of reprimand improper when the accused's commander testified that his purpose in giving the reprimand was to tell the court-martial that the accused had used cocaine more than once and that he was a cocaine addict); *United States v. Hagy*, 12 M.J. 739, 744 (A.F.C.M.R. 1981). Documents given for a punitive purpose, to influence the sentencing decision of a court-martial or that contain inadmissible material are not "properly maintained" in an individual's military record and are not admissible even if maintained within that record. *Boles*, 11 M.J. at 199; *Williams*, 27 M.J. at 530; *Hagy*, 12 M.J. at 744; *United States v. Brister*, 12 M.J. 44, 45 (C.M.A. 1981); *United States v. Dodds*, 11 M.J. 520, 522 (A.F.C.M.R. 1981).

Those cases make clear, however, that military members facing trial by court-martial are not exempt from disciplinary action in advance of their trials. Furthermore, the timing of or mere tardiness in documenting a member's misconduct does not automatically render a letter of reprimand inadmissible. *United States v. Beaver*, 26 M.J. 991, 993 (A.F.C.M.R. 1988); *United States v. Goldsmith*, 29 M.J. 979, 985 (A.F.C.M.R. 1990); *United States v. Hood*, 16 M.J. 557, 560 (A.F.C.M.R. 1983). A reprimand issued within days of trial can serve a rehabilitative purpose. *Beaver*, 26 M.J. at 993; *Hood*, 16 M.J. at 559–60. Instead, the focus of this inquiry should be on whether a commander employed a disciplinary or management tool with the primary purpose of addressing the misconduct and not in order to influence the court-martial. *See Williams*, 27 M.J. at 529–30 (finding reprimand served after preferral of charges in order to dissuade the member from engaging in such conduct was a management tool).

Although trial defense counsel made this argument at trial, she did not cite the military judge to the relevant cases cited above. The military judge also did not discuss this case law, focusing solely on whether these documents were found within the appellant's personnel records and she made her admissibility ruling on those grounds. Because of this, the only information in the record of trial about the timing of these actions came from trial counsel, who said the serving commander had only recently arrived on base and learned about this misconduct.

Failing to consider this relevant case law and, as necessary, develop the record prior to admitting the document was error. Under the circumstances of this case, however, we find these documents would have been admissible if the military judge had applied the correct legal test. Furthermore, even if these documents were erroneously admitted, we find the error did not substantially influence the adjudged sentence and thus did not materially prejudice the appellant's substantial rights. *United States v. Griggs*, 61 M.J. 402, 410 (C.A.A.F. 2005).

The language in each of the letters indicates the commander's intent that they serve a corrective and rehabilitative purpose.[3] He rebukes the appellant for conduct that brings discredit to the Air Force and that is detrimental to the good order and discipline of the unit. He also states that the appellant has engaged in conduct that places him at risk, has failed to meet the standards and expectations of an enlisted Airman, and failing to rectify these problems will result in more severe administrative and/or punitive proceedings. The commander also directed the appellant to "satisf[y his] financial obligations in a proper and timely manner" and to "reside in and physically occupy" his dormitory room on a nightly basis.

---

[3] Given the similarity in the letters' language, it is unclear why the commander elected to serve three separate letters instead of one letter encompassing all three allegations of misconduct. We do not find the decision to serve three letters, however, to be prejudicial within the context of this case.

We also note that the appellant did not enter his guilty pleas until 26 August 2013, two weeks after these letters were served on him. Furthermore, he submitted a request for discharge in lieu of court-martial on 18 August 2013 and that package indicates he intended to litigate the charges at his upcoming trial date. Therefore, at the time his commander served these letters on him and for some period of time afterwards, it was not clear whether the appellant would be convicted of these offenses or whether he would remain on active duty. In light of that, the commander's effort to dissuade the appellant from engaging in further misconduct and to document the Air Force's disapproval of his past misconduct is not improper. *See Beaver*, 26 M.J. at 993 ("At the time the [letter of reprimand] was written, the commander did not know whether accused would plead or be found guilty of any offenses for which he was to be tried; nor was the [letter of reprimand] 'rushed into the record' immediately before or during the trial. All of the indicia of normal record creation and maintenance appear to have been followed, even if the delay between the first of a series of related acts of misconduct occurred months before the letter was written.")

Given this, we find these letters of reprimand were not given for a punitive purpose or to influence the sentencing decision of the court-martial and therefore were admissible pursuant to R.C.M. 1001(b)(2). We also find that the content of the letters of reprimand were not so inflammatory or large in scale, when compared with the misconduct the appellant was found guilty of at trial, as to render them inadmissible under a Mil. R. Evid. 403 analysis. *Cf. United States v. Zakaria*, 38 M.J. 280 (C.M.A. 1993) (holding that letter of reprimand for child molestation where the accused was convicted of larceny was inadmissible); *Boles*, 11 M.J. 195 (holding that letter of reprimand for firebombing where the accused was convicted of larceny was inadmissible).

Even if they were erroneously admitted, we find the appellant was not prejudiced. First, the appellant did not contest that he engaged in this misconduct. He did not submit any comments or documentation for his commander to consider prior to the letters of reprimand being finalized. Additionally, his defense counsel did not object to the admission of his final enlisted performance report (covering July 2012 to July 2013) which gave him an overall rating of "poor (1)" and states he received an unfavorable information file and was placed on the control roster for failing to obey orders and being financially irresponsible, the same misconduct documented in the letters of reprimand. The appellant also did not submit comments to his commander in response to this referral performance report.

Second, the misconduct in the documents was either not inconsistent with the defense theory at trial or was consistent with evidence already before the panel. Regarding the appellant's failure to pay his Star Card, the defense pointed out that this was more indicia of the appellant's dire financial situation and that, overwhelmed by debt, this was part of the financial obligations he was unable to meet. The members

were also already aware that the appellant had purchased alcohol while in the midst of these financial difficulties. The third letter of reprimand alleged the appellant had violated his prior commander's order by failing to reside in base housing between 7 May 2013 and 12 August 2013. The panel had just acquitted the appellant of violating this order between 25 October 2012 and 19 February 2013, after the defense pointed out that he had actually complied with the requirements of that order (which directed him to terminate his off-base lease and move into a dormitory room, but did not prohibit him from sleeping at his wife's new apartment off-base). This letter of reprimand simply documents that the appellant's new commander believed the appellant continued to engage in this conduct after the date referenced in the specification. Letters of reprimand, even if initiated after charges are preferred and prior to trial, are admissible if they have a legitimate purpose as a corrective and rehabilitative management tool, to include dissuading an individual from continuing to engage in misconduct. *Williams,* 27 M.J. at 529–30. We find that this letter of reprimand was a legitimate corrective and rehabilitative management tool.[4]

Third, although trial counsel referenced these letters of reprimand in her sentencing argument, she specifically told the panel they could not increase the appellant's sentence based on what was in these documents. Instead, she presented an argument within the guidelines of R.C.M. 1001(g), arguing to the panel that, amongst other factors, the appellant's disciplinary history (which included these three letters of reprimand, two nonjudicial punishment proceedings in 2012, and other adverse documentation from 2010) was a reflection of his poor rehabilitative potential.

Lastly, as described in more detail below, the sentence the appellant received is not unreasonable for the series of misconduct he engaged in over a multi-month period.

We also conducted our own review under Mil. R. Evid. 403. As stated above, we find these letters of reprimand were properly maintained in the appellant's service records and were therefore admissible. As we describe in the preceding paragraphs in analyzing prejudice, we find that the probative nature of these documents as personnel records of the appellant that "reflect the past military efficiency, conduct, performance and history of the accused" is not substantially outweighed by any of the concerns listed in Mil. R. Evid. 403.

*Sentence Severity*

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the appellant contends his sentence was inappropriately severe. He first asks us to look at the facts and circumstances of his case, as well as compare his case to an Army colonel who was

---

[4] The letter of reprimand also amended the prior commander's order by explicitly ordering the appellant to reside in the dormitory each night going forward.

convicted of 15 charges of, among other things, fraud, adultery, and conduct unbecoming an officer, but was only sentenced to a reprimand and fine.

The appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases. *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985). We are not required to engage in comparison of specific cases "except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *Ballard*, 20 M.J. at 283) (internal quotation marks omitted). The "appellant bears the burden of demonstrating that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.'" *Id.* If the appellant satisfies his burden, the Government must then establish a rational basis for the disparity. *Id.* Here, the appellant has failed in his burden, and we decline to engage in any sentence comparison.

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). We consider whether the appellant's sentence was appropriate "judged by 'individualized consideration' of the [appellant] 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)). While we have a great deal of discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *Lacy*, 50 M.J. at 288; *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988).

The maximum punishment announced at trial was a dishonorable discharge, 16 years and 6 months of confinement, forfeiture of all pay and allowances, and reduction to E-1. While the approved sentence did include a bad-conduct discharge, the appellant received only 6 months of confinement, no forfeitures, and was only reduced to E-4. We recognize that the appellant was almost retirement eligible at the time he was sentenced, but his misconduct spanned several years and involved false statements and larceny of a significant amount of money. Additionally, the Government presented evidence in sentencing that the appellant solicited another individual and procured a fake lease which he submitted to military authorities as proof that he was entitled to Philippines-based OHA. After considering the entire record, we do not find the sentence inappropriately severe.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court