### UNITED STATES

v.

**Jeffrey L. WILLIAMS, 527 89 9602, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 88 0673.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 30 Oct. 1987.

Decided 23 March 1989.

L.Cdr. J.J. Quigley, JAGC, USN, Appellate Defense Counsel.

Lt. J.L. Staley, JAGC, USNR, Appellate Defense Counsel.

Lt. Eralides E. Cabrera, JAGC, USNR, Appellate Government Counsel.

Before BYRNE, C.J., and ALBERTSON and RUBENS, JJ.

ALBERTSON, Judge:

Appellant was tried and convicted by general court-martial composed of military judge alone for seventy-nine specifications of uttering checks with the intent to defraud in violation of Article 123a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 923a, and seven specifications of making worthless checks by dishonorable failure to maintain sufficient funds in violation of Article 134, UCMJ, 10 U.S.C. § 934. Appellant's conviction was based upon his pleas of guilty. The military judge sentenced the appellant to confinement for 18 months, forfeiture of $250.00 pay per month for 18 months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence adjudged but suspended all forfeitures in excess of $75.00 pay per month for one year with provision for automatic remission.

Appellant's case was initially submitted to this Court without assignment of error; however, we specified the following issues for briefing by the parties:

## I

DID APPELLANT'S CONDUCT OF WRITING CHECKS WITH THE INTENT TO DEFRAUD AND KNOWING AT THE TIME HE MADE AND UTTERED THE CHECKS THAT HE DID NOT HAVE AND WOULD NOT HAVE SUFFICIENT FUNDS IN OR CREDIT WITH THE BANK FOR PAYMENT UPON PRESENTMENT RESULT IN THE COMMISSION OF THE OFFENSE CHARGED WHEN THE BANK PAID THE CHECKS IN FULL UPON PRESENTMENT?

## II

IF THE APPELLANT'S CONDUCT DID CONSTITUTE THE OFFENSE OF ARTICLE 123a, OR ANY OTHER OFFENSE UNDER THE UNIFORM CODE OF MILITARY JUSTICE, DID THE BANK'S PAYMENT UPON PRESENTMENT CREATE SUCH EXTENUATION AND MITIGATION THAT THE SENTENCE ADJUDGED WAS INAPPROPRIATELY SEVERE?

Appellant's answers to the questions posed by the military judge during his conduct of the providence inquiry provide a more than sufficient factual basis for the appellant's pleas of guilty and the subsequent findings of guilty in accordance with those pleas as made by the military judge. It is the evidence elicited during the sentencing phase of trial that raised questions in the Court's mind as to whether the evidence was inconsistent with the appellant's pleas to the seventy specifications alleged

under Article 123a as making and uttering worthless checks drawn on the National Bank of Fort Sam Houston, such that the pleas were improvident. Article 45, UCMJ, 10 U.S.C. § 845; Rule for Courts–Martial (R.C.M.) 910(a)(2), Manual for Courts–Martial (MCM), United States, 1984.

The evidence so elicited consisted of: (1) Copy of the summarized Article 32, UCMJ, investigation testimony of the manager of the National Bank of Fort Sam Houston located on Camp Foster, Okinawa (Defense Exhibit E), which revealed:

We were a brand new bank, and we gave everyone the benefit of the doubt. We decided to pay all items, because we wanted to ensure that all items—we were more concerned with not returning a good check.

Lance Corporal Williams did not have sufficient funds in his account to cover the 70 checks. He did not have a special line of credit or overdraft protection to cover the checks. After he was contacted, he set up a repayment program. Lance Corporal Williams was first notified on March 25, 1987, that he did not have sufficient funds in his account. He did not pay the checks off within the five day limitation period.

Mrs. Wildy (phon) worked for the National Bank of Fort Sam Houston, as a collection clerk. She would attempt to negotiate settlements with people who owed money to Fort Sam Houston. She did do that with Lance Corporal Williams. She did agree with him that if he paid back the checks she would not notify his command that he had bounced the checks.

(2) A promissory note in the amount of $4,735.25 ($410.00 per month until May 1988) to the National Bank of Fort Sam Houston signed by appellant (Defense Exhibit C at page 3); and, (3) A copy of a voluntary request for an allotment signed by the appellant to deduct $410.00 pay per month from his monthly pay to be paid to Fort Sam Houston (Defense Exhibit C at page 5).

The promissory note and the allotment request were both made prior to the time charges were preferred against appellant.

Two Board of Review cases are similar on the facts. In *United States v. Crosby*, 41 C.M.R. 927 (AFBR 1969), the accused had written allegedly worthless checks. Crosby pled not guilty and the critical issue was whether the Government had proven beyond a reasonable doubt his intent to defraud. The Board found the evidence insufficient to sustain a conviction because (1) the bank had previously honored checks drawn by the accused notwithstanding the fact that there were insufficient funds in his account to honor the checks upon presentment, and (2) his name was on an overdraft list from which the tellers knew, or could have determined, the status of his account at the time they honored the checks. Similarly, in *United States v. Kess*, 48 C.M.R. 106 (AFBR 1973), the accused's overdrafts had been customarily honored by the drawee bank. As had occurred in the past, the drawee bank paid the overdrafts for which the accused was then charged with dishonorably failing to maintain funds for their payment in violation of Article 134, UCMJ. The Board found the accused's acts were not dishonorable, despite the fact that he had not redeemed the checks until seven weeks after their dishonor, because (1) the accused's tardiness was satisfactorily explained, (2) he had not written an unreasonable number (four) of checks, and (3) the amount by which his account was overdrawn never totalled more than $165.00. The Board then found that it was unable to find sufficient evidence that reflected the accused's bad faith or gross indifference toward his obligation to maintain his account satisfactorily.

The accused in both *Crosby* and *Kess* pled not guilty whereas the appellant in this case pled guilty. In the former Board of Review cases, the fact-finders had to be convinced beyond a reasonable doubt that the evidence presented by the Government, along with the evidence chosen to be presented by the defense in each case, proved the accused intended to defraud the

bank at the time they wrote the checks.[1] The Government failed to bear its burden in *Crosby* and *Kess* apparently because the bank's conduct in each case served to create doubt in the Board of Review's fact-finding (Article 66, UCMJ, 10 U.S.C. § 866) minds that each accused had the requisite intent at the time they drew and uttered the checks.

In appellant's case, however, he admitted, by his guilty plea, the critical element of intent to defraud: that at the time he wrote and uttered the checks he knew that he did not have or would not have sufficient funds in, or credit with, the bank for the payment thereof upon presentment. Paragraph 49b(1)(d), Part IV, MCM, 1984. Appellant alleviated the Government from bearing its burden of proving his intent beyond a reasonable doubt.

Finally, in *United States v. Crosby*, 22 M.J. 854 (AFCMR 1986) (hereinafter *Crosby II*), the Air Force Court of Military Review determined that the factual basis of the accused's pleas of guilty to having made and uttered worthless checks was too inadequate for them to affirm the findings of guilty because her answers relating to the element of the intent to defraud revealed that she negligently believed that she was uttering a good check. The Court held that such negligent belief (*i.e.*, she should have known that she did not have sufficient funds) did not constitute intent to defraud even if there were insufficient funds in her account with which to pay the checks. The Court found that

> [t]he crux of the offense of fraudulently uttering worthless checks is the offender's state of mind at the time the checks are uttered. The offender must intend to defraud the payee or recipient of the

check regarding the worthlessness of the check.

*Crosby II*, at 855.

■ Appellant, like the accused in *Crosby II*, pled guilty; but unlike the accused in *Crosby II*, appellant's answers during providency leave no doubt about the factual basis of his pleas, including the intent to defraud. He stated that he knew at the time he made and uttered the 70 checks drawn on the National Bank of Fort Sam Houston that he did not have sufficient funds to cover them upon their presentment and that his conduct was wrong and unlawful and done with the intent to defraud the bank. R. 15 and 17. Considering the number of checks drawn, the amount of those checks (totalling about $7,000.00), the period of time involved (2 January–27 April 1987, nearly four months), the monthly income to which he was entitled, and the status of his account with Fort Sam Houston during this period, a *prima facie* case of making and uttering worthless checks with the intent to defraud is made, despite the bank's honoring the checks and his own post-conduct actions of voluntarily taking out an allotment to make restitution, and the bank's acceptance of a promissory note providing for monthly payments as restitution for their honoring the worthless checks. We conclude, therefore, that the evidence presented during the sentencing phase is not inconsistent with the plea because it is not *inconsistent* with the intent element and is *consistent* with the remaining elements. Accordingly, we affirm the findings approved on review below.

■ The evidence of appellant's post-conduct activity of making restitution is a substantial matter in extenuation and miti-

---

1. The Government was further tasked in *Kess* with proving a violation of Article 134, UCMJ, in that the accused also thereafter dishonorably failed to maintain sufficient funds in his account for the payment of the uttered checks upon their presentment to the bank. The Government apparently failed in that task as well due to the particular circumstances of the accused's finances as complicated by military pay allotments, irregular pay, and promises by the military finance office.

gation. Such evidence has been considered by this Court in connection with the second specified assignment of error. Recognizing the appellant's admission to his intent and knowledge at the time of the offenses, the bargained for pretrial agreement, and the serious nature and number of the offenses involved, we find the sentence adjudged appropriate and therefore affirm the sentence as approved on review below.

Chief Judge BYRNE and Judge RUBENS concur.