## UNITED STATES

### v.

**James C. McNEIL, 278 64 9512, Lance Corporal (E–3), U.S. Marine Corps.**

#### NMCM 88 2383.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 5 Nov. 1987.

Decided 28 Feb. 1990.

Lt. Robert E. Wallace, JAGC, USNR, Appellate Defense Counsel.

Maj. Laura L. Scudder, USMC, Appellate Government Counsel.

Before McLERAN, HILTON and RUBENS, JJ.

HILTON, Judge:

Appellant was charged with 38 specifications of making and uttering checks without sufficient funds with intent to defraud in violation of Article 123a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 923a. Contrary to his pleas, he was convicted by a general court-martial with enlisted members of 23 violations of Article 123a (making and uttering a worthless check with intent to defraud) and eight violations of Article 134, 10 U.S.C. § 934 (the lesser included offense of making and

uttering a worthless check by dishonorable failure to maintain sufficient funds). He was sentenced to a bad-conduct discharge, confinement for 9 years, total forfeitures, and reduction to E–1. The convening authority approved the sentence and suspended confinement in excess of 18 months.

▇ Appellant's case was initially submitted without assignment of error; however, we specified the following issue for briefing by the parties:

DOES THE EVIDENCE OF RECORD SUPPORT THE FINDINGS OF GUILTY OF VIOLATIONS OF ARTICLES 123a AND 134, WHERE THE DRAWEE BANK PAID THE SUBJECT CHECKS AS OVERDRAFTS?

We have examined the record of trial, considered the briefs of counsel, and heard oral argument.

On 18 February 1987, appellant opened a checking account with the National Bank of Fort Sam Houston, Camp Kinser, Okinawa, Japan (hereinafter, the Bank). Shortly thereafter he deployed to Korea. While deployed, appellant made and uttered the 38 checks which are the subject of this case. He testified at trial that at the time he uttered the checks he thought he would have sufficient funds in his account to cover them as a result of direct deposits of military pay, $300 deposited in the account when it was opened, and $300 he had requested the bank to transfer into his checking account from savings. Appellant did not have an overdraft protection arrangement or understanding with the Bank for

the payment by the Bank of any check drawn against his account for which there were insufficient funds to pay the check upon its presentment. That is, for reasons discussed hereinafter, he had no "credit" with the Bank as that term is used in Article 123a, UCMJ.

In January 1987, the National Bank of Fort Sam Houston had replaced the American Express Bank as the contractor providing military banking facilities for Department of Defense installations on Okinawa, Japan. A casualty of the transfer of responsibility for providing banking services from the American Express Bank to the National Bank of Fort Sam Houston was accurate record-keeping, at least with respect to some accounts.[1] As a stopgap measure until its computer system stabilized, the Bank had adopted a policy of paying checks drawn against an account with insufficient funds, notwithstanding that there was no overdraft agreement between the account holder and the Bank.[2]

Unbeknown to appellant, and pursuant to this policy, the Bank paid 29 checks written by the appellant which would not have otherwise cleared his account because of insufficient funds. Appellant now stands convicted of violations of Articles 123a and 134, UCMJ, involving 22 of those checks. Nine specifications of which appellant was convicted involve overdrafts which the Bank did not honor, but instead returned to the payees due to insufficient funds. These nine findings of guilty are not in issue.[3]

---

1. When asked if the changeover from the American Express Bank to the National Bank of Fort Sam Houston as the institution which would provide banking services caused any problems, the overdraft clerk of the Camp Kinser Branch of the National Bank of Fort Sam Houston testified: "It raised a few problems. The account holders with American Express had their account numbers changed to new numbers coinciding with Fort Sam accounts, and the old records from American Express weren't all given to the Fort Sam Bank employees to continue normal business."

2. The overdraft clerk, who was familiar with appellant's account, testified that although appellant did not open an account with an overdraft protection feature "[t]he policy was to

cash all checks regardless of whether they had funds in the account or not, due to the fact that we weren't sure if the computer system was accurately depicting the balances in everyone's account." When asked how long this policy was in effect, the clerk replied: "The bank managers decided that April 1—from January 2d to April 1st, would be sufficient time for the accounts to accurately depict their true balance."

3. By way of explanation, of the 38 checks which form the basis of the 38 specifications of the Charge, 29 of the overdrafts were honored by the Bank, and nine of the 38 checks were returned to the various payees due to insufficient funds. Of the 29 overdrafts honored by the Bank, seven were the subject of specifications of which appellant was acquitted.

Appellant now contends that the Bank's policy of honoring his checks constituted an extension of credit within the meaning of Article 123a, UCMJ, and that the Government has failed, therefore, to prove beyond a reasonable doubt the intent by the appellant to defraud.[4] We disagree.

In Article 123a, UCMJ, "credit" is defined as "an arrangement or understanding, express or implied, with the bank or other depository for the payment of the check, draft, or order." *See also* paragraph 49c(12), Part IV, Manual for Courts–Martial (MCM), United States, 1984. There is no evidence in this case of any such arrangement or understanding between appellant and the Bank. On the contrary, testimony at trial of Bank officials reflects that the Bank's policy of paying overdrafts was a unilateral decision undertaken as a temporary business expedient at a time when the Bank's record-keeping system was not functioning accurately.[5] In any event, appellant's reliance upon the simple fact of the Bank's payment of his overdrafts as negating an intent to defraud misses the point. It is what the appellant intended and knew *at the time he made and uttered* the worthless checks which is key, not what action the Bank subsequently took on the overdrafts on its own initia-

tive. The evidence of record establishes beyond a reasonable doubt that at the time appellant made and uttered each of the checks for which he was convicted of violating Article 123a, UCMJ, the appellant: (1) intended to defraud the third party payee (variously, the Korean Area Exchange, American Express Bank, or the U.S. Treasury), and (2) knew that he did not have or would not have sufficient funds in, or credit with, the Bank for payment of the check upon its presentment. Article 123a, UCMJ; paragraph 49b, Part IV, MCM, 1984.

■ With regard to the findings of guilty of making and uttering eight worthless checks by dishonorable failure to maintain sufficient funds in violation of Article 134, UCMJ, appellant asserts that the evidence of record fails to establish beyond a reasonable doubt either that: (1) his failure to maintain sufficient funds in his account subsequent to making and uttering the checks was dishonorable, or (2) that under the circumstances, his conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Central to the commission of the offense of making and uttering a worthless check

---

4. Citing *United States v. Crosby*, 41 C.M.R. 927 (AFCMR 1969) and *United States v. Williams*, 28 M.J. 736 (NMCMR 1989). In *Crosby*, the accused, who pleaded not guilty, was convicted of numerous specifications of issuing worthless checks with intent to defraud in violation of Article 123a, UCMJ. The Army Court of Military Review held that the evidence was insufficient to support the findings of guilty where (1) it appeared the bank had previously honored accused's overdrafts, and (2) the checks in issue were presented by the accused at the bank and were cashed by tellers without question, although the accused's name had been placed on an overdraft list and the tellers either knew or could have determined the status of the accused's account; however, the facts are not clear from this decision with regard to whether the appellant had been aware that his bank had previously honored his earlier overdrafts. To the extent the evidence at trial in *Crosby* established, as in the case *sub judice*, that the accused had no knowledge of the Bank's having previously honored his overdrawn checks, we believe *Crosby* was wrongly decided. In *Williams*, a guilty plea case, the Court distinguished *Crosby* on the basis that the latter decision involved an

accused who had pleaded not guilty, and consequently it was required that the fact-finder be satisfied beyond a reasonable doubt that the evidence of record proved the accused intended to defraud the bank at the time he wrote the checks. In *Williams*, the accused had entered provident pleas of guilty to numerous violations of Article 123a, UCMJ, under circumstances similar to the case at hand: the National Bank of Fort Sam Houston paid Lance Corporal Williams' overdrafts in the absence of any special line of credit or overdraft protection. The Navy–Marine Corps Court of Military Review upheld Williams' conviction on the basis of his admission by his provident guilty plea of "the critical element of intent to defraud: that at the time he wrote and uttered the checks he knew that he did not have or would not have sufficient funds in, or credit with, the bank for the payment thereof upon presentment." *Williams*, 28 M.J. at 739.

5. *See supra* note 2. Eventually, the Bank stopped covering appellant's overdrafts with the result that nine checks written by the appellant with intent to defraud were returned to the payees because of insufficient funds.

by dishonorably failing to maintain funds in one's bank account is that the check be dishonored. In the context of the worthless check offense under Article 134, UCMJ, it is the dishonor of commercial paper which reflects discredit upon the armed forces. *See United States v. Downard*, 6 U.S.C.M.A. 20 C.M.R. 254 (1955).[6] Here, the Bank, on its own initiative and for its own purposes, honored appellant's checks. In view of that fact, and in light of all the circumstances of this case, we are not convinced beyond a reasonable doubt that appellant's conduct was service discrediting.

Accordingly, the findings of guilty of the eight violations of Article 134, UCMJ, are set aside and said specifications and Charge are dismissed. Article 66(d), 10 U.S.C. § 866(d). The findings of guilty of Article 123a, UCMJ, as approved on review below are affirmed. Upon reassessment, we affirm the sentence as approved on review below.[7] *United States v. Sales*, 22 M.J. 305 (C.M.A.1986).

Senior Judge McLERAN and Judge RUBENS concur.

---

**6.** *See also United States v. Lightfoot*, 7 U.S.C. M.A. 686, 23 C.M.R. 150 (1957) (Latimer, J., concurring). In the case of a worthless check alleged as a violation of Article 134, UCMJ, "[T]he discrediting impact on the Service flows from the failure of the check for reasons other than a mistake of ordinary negligence." (Emphasis added)).

**7.** The punishment that is the subject of reassessment is 18 months confinement, total forfeiture of pay and allowances, reduction to E–1, and a bad-conduct discharge. Confinement in excess of 18 months, suspended for one year by action of the convening authority on 6 April 1988, has been remitted.