**UNITED STATES**

v.

**Cadet First Class Richard L. SASSA-MAN, 186–56–6948 FV, United States Air Force.**

**ACM 28208.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 26 Aug. 1989.

Decided 30 Jan. 1991.

688

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Major George P. Clark.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Brenda J. Hollis and Major Leonard R. Rippey.

Before O'BRIEN, O'HAIR, PRATT and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

O'BRIEN, Chief Judge:

In his fourth and final year as a cadet at the United States Air Force Academy, things started going badly for Cadet First Class Richard L. Sassaman, and he was given the opportunity to resign. Before his separation from the Academy could be accomplished however, a number of things came to light which resulted in this general court-martial.

Sassaman was charged with two specifications of willful disobedience of lawful orders, driving while intoxicated, two specifications alleging the theft of personal property belonging to his fellow cadets, and writing thirteen bad checks. He pleaded guilty to one of the alleged willful disobediences, the drunken driving, and the bad checks, and not guilty to the other disobedience and the alleged thefts. He was acquitted of one of the two thefts, and convicted of the balance of the specifications. His approved sentence is a dismissal, confinement for eight months, and forfeiture of $400.00 pay per month for eight months.

Appellant now alleges three errors for our consideration. First he contends that the military judge erred in accepting his guilty plea to two of the bad check specifications. Second, he contends that the finding of guilty to one of the disobedience specifications should be reduced to a lesser included offense, since the military judge failed to conduct the appropriate inquiry

before receiving a stipulation of fact into evidence.[1] Finally, he asserts that the sentencing instructions were deficient since they did not direct the formulation of a sentence without reliance on potential mitigating action by higher authority in accordance with R.C.M. 1005(e)(3).

We find no merit in the second and third assignments of error, but we agree that the pleas of guilty to the two checks in question were improperly accepted. We will set aside the findings of guilty of these two specifications, and reassess the sentence.

### THE CHECKS

■ Both check offenses in issue were fashioned as violations of Article 123a, UCMJ, 10 U.S.C. § 923a, requiring proof of a specific intent to defraud. The first of the two checks in question was made out for $303.00. During the inquiry mandated by *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (C.M.A.1969), (RCM 910), appellant told the military judge that he knew he didn't have exactly $303.00 in the bank but thought he had about $300.00. The bank had "protected" him in the past so he thought, "I can take a chance at the bank protecting me on a $3.00 overdraw." They didn't.

The second bad check was in the amount of $38.27, to the order of Hunan's Restaurant. Appellant noted that it was made the day before payday and testified, "I wrote the check hoping that before it was cashed, I would have the money deposited in the bank from the next payday." He didn't.

Appellant's hope or expectation that the bank would "protect" him for the $3 overdraft could have been a defense and the judge should have pursued it further. The judge didn't. This was error. *See United States v. Crosby,* 41 C.M.R. 927 (A.F.C.M.

R.1969); *United States v. Kess,* 48 C.M.R. 106 (A.F.C.M.R.1973).[2]

The judge similarly fell short of the necessary inquiry about the second check. When appellant testified that he thought (because of an intervening payday) that there would be enough money in his account to cover the check, the judge should have pursued the question as to whether that expectation was sincerely held and whether it was reasonable.

■ The Army Court of Military Review has dealt with the same problem, and its logic is persuasive:

> [A] conviction cannot be had where the drawer of the check can show he had a reasonable expectation that it would be paid as a result of an arrangement or understanding with the bank, or because he expected to be able to make a deposit sufficient to cover the check before it was presented for payment,.... For these reasons, fraudulent intent is lacking and the prosecution must fail.... [I]f a person issues a check upon a current account in which he presently has insufficient funds to cover this check, but is expecting his monthly paycheck to be deposited in the due course of business before the check he issued is presented for payment, this might well be a reasonable expectation which would negate any intent to deceive or defraud.

*United States v. Webb,* 46 C.M.R. 1083 (A.C.M.R.1972).

The matters were raised by appellant relating to these two specifications inconsistent with his guilty plea. The subject should have been further explored by the military judge, and, if the inconsistency could not be resolved, the plea should have been rejected. *United States v. Davenport,* 9 M.J. 364 (C.M.A.1980).

1. *United States v. Bertelson,* 3 M.J. 314 (C.M.A. 1977).

2. Two recent Navy cases are critical of *Crosby* and *Kess: United States v. Williams,* 28 M.J. 736 (N.M.C.M.R.1989); and *United States v. McNeil,* 30 M.J. 648 (N.M.C.M.R.1990). In *Williams,* the Navy Court noted that the accused had written 70 checks aggregating $7000.00. Placing these facts next to the accused's monthly income and pay status they were convinced that the accused intended to defraud despite the fact that his bank had in the past honored some overdrafts. *McNeil* criticized *Crosby,* but on a factual foundation different from what we have here, and is otherwise inapposite.

■ We are unable to affirm the lesser included offense, failing to maintain sufficient funds under Article 134, 10 U.S.C. § 934, since that article carries the additional requirement of proof that the accused's conduct was to the prejudice of good order and discipline, or of such a nature so as to bring discredit upon the armed forces. Since neither was ever established (or even mentioned) at the trial, we are precluded from any resort to this lesser included offense on appeal. *United States v. Brown*, 18 M.J. 360 (C.M.A.1984); *United States v. Hendrix*, 21 U.S.C.M.A. 412, 45 C.M.R. 186 (C.M.A.1972). The findings of guilty of these two specifications are set aside, and in the interest of judicial economy, they are ordered dismissed.

## THE STIPULATION

■ Apprehended by the security police for driving while intoxicated, appellant was restricted to the cadet command post, and ordered not to drive on the United States Air Force Academy. The following evening, he left his room, "hot wired" his car (his keys had been confiscated), and drove into town to retrieve a flat tire. He thereafter returned to the North Gate of the Academy where he was again apprehended by the security police.

The two specifications of Charge I embody this incident, each alleging willful disobedience of lawful commands of his superior commissioned officer (the order of restriction, and the order not to drive) both in violation of Article 90, 10 U.S.C. § 890, UCMJ. Appellant pleaded guilty to willfully disobeying the order of restriction, but while admitting that he disobeyed the order not to drive, he argued that this disobedi-

ence was not willful and attempted to plead guilty to a lesser included offense, a simple failure to obey a lawful order in violation of the UCMJ, Article 92, 10 U.S.C. § 892.[3]

Appellant contended that an inkblot on the order not to drive partially obscured the effective date making him think the order was effective on 6 July rather than 5 July. He intended to get back by midnight, but car trouble resulted in his not arriving at the north gate of the Academy until 47 minutes into the next day, 6 July. While apparently conceding that the order had been violated by his late arrival on base, appellant maintained that the "mistake of fact" concerning the effective date removed this offense from the category of "intentional defiance of authority" contemplated by Article 90.

Appellant was nonetheless found guilty of the willful disobedience as charged. He now argues that since the only evidence which supports this conviction is the stipulation of fact, the stipulation must be confessional in nature, triggering the warning requirements of *United States v. Bertelson*, 3 M.J. 314 (C.M.A.1977).[4] We disagree for two reasons. Most importantly, both sides conceded that the defense of mistake of fact was in issue, the defense argued it and the military judge instructed on it.[5] This was clearly not a case where there would "be 'no contest' remaining as to the offense in question," after a plea of not guilty and a stipulation of fact. *United States v. Kepple*, 27 M.J. 773, 780 (A.F. C.M.R.1988), *aff'd*, 30 M.J. 213 (C.M.A. 1990); *United States v. Hagy*, 12 M.J. 739 (A.F.C.M.R.1981).

---

3. Because appellant's responses during the *Care* inquiry did not make it clear that he was aware that midnight had passed when he pulled up to the entry gate of the Academy, the military judge refused to accept this plea, and entered a plea of not guilty.

4. Before *Bertelson*, a stipulation of fact which "amounts practically to a confession" was not admissible in a case where the accused was pleading not guilty. (Paragraph 154b(1), MCM, 1969 (Rev.)). *Bertelson* permitted such a stipulation, provided that the judge ascertained personally from the accused that he knowingly,

intelligently and voluntarily consented to its admission.

5. The judge instructed: "If the accused was, at the time of the offense, under the mistaken belief that the command commenced on 6 July 1989 and not on 5 July 1989, and that he could return to the Academy prior to midnight, 5 July 1989, then he cannot be found guilty of the offense of willfully disobeying a superior commissioned officer. The mistake, no matter how unreasonable it might have been, is a defense."

In addition, we find it significant that appellant testified on the merits. Shown the stipulation, he was asked:

DC: Does this constitute what you would have testified to about what you did on the evening of the fifth of July, early morning minutes of the sixth of July 1989?

A: Yes, sir.

DC: Do you adopt this written document as the embodiment of your testimony on this charge?

A: Yes, sir.

Q: [DC] Do you have anything to add to what's on that paper?

A: No, sir.

The court members later asked him three questions directed at this incident. The first two concerned why he "hot wired" his car and who had his keys, and the third asked him why he was late on the morning of 6 July, to which he responded in some detail. Even if we were to hold that the stipulation was improperly admitted, the same evidence was before the court through the medium of appellant's testimony, so we would find no prejudice.

## THE SENTENCE INSTRUCTION

■ The military judge's instructions on sentence initially omitted the required direction to the members that they were solely responsible for selecting an appropriate sentence, "and may not rely on the possibility of any mitigating action by the convening or higher authority." R.C.M. 1005(e)(3). When the President of the court-martial asked what would happen to appellant if they did not adjudge a dismissal, the military judge corrected this omission. While it would have been preferable if he had resorted to the pattern instruction contained in Department of the Army Pamphlet 27–9, Military Judge's Bench Book, his instructions were adequate, and the defense did not object.

## THE SENTENCE

■ One further issue merits our attention. From 7 July 1989 until the trial commenced, a total of 51 days, appellant was restricted to the cadet command post. He lived, worked and slept in "one small cubicle on the terrazzo level of Vandenburg Hall." He was allowed access to the chapel, library and gym, but only under continuous escort. He had to sign in and out every time he came and went.

Trial defense counsel moved for credit toward confinement based upon this pretrial restraint. The military judge made detailed findings of fact, and concluded "the fact that Cadet Sassaman felt uncomfortable with an escort is unfortunate, but, that is life." While we accept the judge's findings of fact, we believe his conclusion, that the conditions of appellant's restriction were "not so onerous as to make it tantamount to confinement," was erroneous. *United States v. Schilf*, 1 M.J. 251 (C.M.A. 1976); *United States v. Smith*, 20 M.J. 528 (A.C.M.R.1985); *United States v. Mason*, 19 M.J. 274 (C.M.A.1985). The fifty-one days credit should be applied.

■ Having set aside the findings of guilty and dismissed Specifications 1 and 5 of Charge IV, it is necessary to reassess the sentence. Taking into consideration that appellant is a cadet who stands convicted of the willful disobedience of two lawful commands of his superior commissioned officer, theft of personal property belonging to a fellow cadet, driving while intoxicated, and eleven other bad checks, upon reassessment, we find this sentence to be no greater than that which the members would have adjudged even if the two dismissed specifications had not been before them. *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). Having reassesed the sentence, we find it to be appropriate based upon the entire record. *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990).

Because appellant was erroneously denied credit for the equivalent of an additional 51 days of pretrial confinement, we will take corrective action. Since all confinement has already been served, we will reduce the forfeitures to $400.00 per month for four months. The findings of guilty, as modified, and the sentence, both are

AFFIRMED.

Senior Judge PRATT and Judge JAMES concur.

Senior Judge O'HAIR did not participate.

### UNITED STATES

v.

**Sergeant Michael R. ACEVEDO, FR 263–71–1866, United States Air Force.**

**ACM 28718.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 8 May 1990.

Decided 6 Feb. 1991.

Appellate Counsel for the Appellant: Major Ronald G. Morgan and Captain Paul M. Dankovich.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr.; Major Paul H. Blackwell, Jr. and Captain David G. Nix.

Before O'BRIEN, O'HAIR, PRATT and JAMES, Appellate Military Judges.