**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Airman COLLIN R. GRAY**
**United States Air Force**

**ACM S32178**

**23 March 2015**

Sentence adjudged 1 August 2013 by SPCM convened at Sheppard Air Force Base, Texas. Military Judge: Ira Perkins (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 3 months, and reduction to E-1.

Appellate Counsel for the Appellant: Philip D. Cave, Esquire and Samuel C. Moore, Esquire.

Appellate Counsel for the United States: Major Jason S. Osborne and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and MITCHELL
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Senior Judge:

A special court-martial composed of a military judge convicted the appellant, pursuant to his pleas, of wrongfully using, possessing, and distributing marijuana; and wrongfully possessing and distributing Alprazolam (Xanax), in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The adjudged sentence consisted of a bad-conduct discharge, confinement for 9 months, and reduction to E-1. Pursuant to a pretrial agreement, the convening authority lowered the confinement to 3 months and approved the remainder of the sentence as adjudged.

On appeal, the appellant argues: (1) the military judge erred by not merging the specifications in his case for purposes of sentencing, (2) his attorney-client relationship with a military defense counsel was improperly severed, and (3) his due process rights were violated when he was forced to accept nonjudicial punishment. Finding no error that materially prejudices a substantial right of the appellant, we affirm the approved findings and sentence.

*Background*

In early 2013, the 18-year-old appellant engaged in a series of events involving illegal and prescription drugs that led to the charges in this case. On 11 January 2013, the appellant and another Airman, Airman First Class (A1C) DL, left an off-base hotel in search of marijuana. The appellant purchased approximately two grams of marijuana and the two returned to the hotel. Early the next morning, each of the men emptied the tobacco from a cigar and replaced it with marijuana. The two men and a third Airman went to a gazebo next to the hotel and smoked the marijuana while passing it around the group. For this misconduct, the appellant pled guilty to one specification each of using and distributing marijuana.

A week later, on 18 January 2013, a female Airman, A1C JB, asked the appellant to purchase marijuana for her and a friend. Unbeknownst to the appellant, A1C JB was working as a confidential informant with the Air Force Office of Special Investigations. After the two agreed on a price, the appellant purchased the marijuana and met her at an off-base restaurant. The two went to a hotel room with two other Airmen (including A1C DL), and the appellant produced a bag of marijuana that had been in his possession. He divided it into two portions and gave A1C JB approximately 30 percent of the initial bag in exchange for $40. The appellant kept the rest of the marijuana, placing it in a nightstand drawer. For this misconduct, the appellant pled guilty to one specification each of possessing and distributing marijuana.

The next morning, the appellant, A1C JB and A1C DL went to a skateboard park across the street from the hotel. The appellant brought some of the marijuana from the nightstand and smoked it with A1C DL. The two passed the marijuana cigarette back and forth until it was finished. For this misconduct, the appellant pled guilty to one specification each of using and distributing marijuana.

Several weeks later, on 2 February 2013, A1C JB contacted the appellant and asked him to purchase marijuana and "pills" for an upcoming party. Later that evening, the appellant met A1C JB at an off-base hotel. The appellant's drug dealer arrived, and the appellant exchanged money for marijuana and several Xanax pills. After giving A1C JB two of the pills in the hotel elevator, the appellant took the marijuana and the remainder of the pills to the hotel room where he gave two of the pills to A1C DL. For

this misconduct, the appellant pled guilty to one specification each of possessing and distributing Alprazolam and one specification of possessing marijuana.

## *Unreasonable Multiplication of Charges*

The appellant was charged with nine specifications under Article 112a, UCMJ, alleging that he used, distributed and possessed certain controlled substances. Although he did not object at trial, the appellant now contends the Government's charging scheme unreasonably exaggerates his criminality and increased his punitive exposure such that the military judge should have merged certain specifications for sentencing. He asks this court to "merge" the specifications for each day's misconduct.

The doctrine of unreasonable multiplication of charges stems from "those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001). Although the President has prohibited the waiver of certain fundamental rights in a pretrial agreement, unreasonable multiplication of charges is not among them and therefore an accused can knowingly and voluntary waive this issue. *United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009) (holding the appellant waived a claim of unreasonable multiplication when a pretrial agreement provision waived all waivable motions).

As part of a pretrial agreement, the appellant in this case agreed to waive all waivable motions. Given this pretrial agreement provision and his failure to object or request merger of the specifications at trial, we find the appellant did not preserve a claim on appeal regarding dismissal of any unreasonably multiplied charges. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012).

## *Release of Defense Counsel*

Prior to trial, the appellant was represented by Captain (Capt) TL. By the time of his trial, he was represented by a different defense counsel, Capt TH. During the initial Article 39(a), UCMJ, 10 U.S.C. § 839(a), session, the military judge noted Capt TL's prior representation of the appellant and this exchange occurred:

> MJ: I note . . . that you were previously represented by . . . Captain [TL]? Is that right?
>
> ACC: Yes, Your Honor.
>
> MJ: And I understand she has recently had a child and she is no longer on the case?
>
> ACC: Yes, Your Honor

MJ: And you have severed that attorney client relationship with her[?]

ACC: Yes, Your Honor.

MJ: Okay. And you're happy with her being replaced by Captain [TH]?

ACC: Yes, Your Honor.

MJ: So, as it stands now, only Captain [TH] is representing you?

ACC: Yes, sir.

The appellant now contends Capt TL was improperly excused from the case and that he was prejudiced by her absence at his trial. In his brief, the appellant argues the military judge led him to the above "rote conclusions" and that this process is not one of the limited circumstances that allows for severance of an attorney-client relationship. We disagree.

Under the Rules for Courts-Martial (R.C.M.), an established attorney-client relationship between a defense counsel and an accused may be severed only under a limited set of circumstances. One of those circumstances is "with the express consent of the accused." R.C.M. 506(c). The appellant argues this provision does not apply to his case because there is no indication that other options, including a delay in the trial, were presented to him as alternatives to severance, citing *United States v. Hutchins*, 69 M.J. 282, 289 (C.A.A.F. 2011).

Unlike the situation in *Hutchins*, here there is no evidence in the record (at trial or on appeal) that the appellant did not consent to the severance of his relationship with Capt TL or that he was misinformed or misadvised prior to giving that consent.[1] In the absence of such evidence, we will not find or infer that the absence of Capt TL from the appellant's court-martial was improper. Furthermore, after being advised that he had the right to choose a different military lawyer to represent him at trial, the appellant expressly chose to be represented by Capt TH. Lastly, we do not find any prejudice to the appellant by not having Capt TL at his trial.

*Admission of Nonjudicial Punishment*

Through a docketing memorandum dated 24 July 2013, the appellant's trial date was set for 1 August 2013. On the morning of 30 July 2013 at 1006 hours, the

---

[1] We note that appending to the record a release of counsel signed by the accused is a prudent practice.

appellant's commander served him with nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815, based on allegations the appellant stole two cell phones belonging to other Airmen on 24 July 2013. The appellant and his trial defense counsel were told these larceny charges would be sent to a second court-martial if the appellant did not accept this forum or if the nonjudicial punishment paperwork was not completed in time for it to be admitted as sentencing evidence at his 1 August 2013 court-martial.

Acting in response to this, the appellant accepted nonjudicial punishment at 1536 hours on 31 July, although the Air Force Form 3070 itself gave him until 2 August 2013 to make his decision. *See* Air Force Instruction (AFI) 51-202, *Nonjudicial Punishment*, ¶ 3.12 (11 August 2011) ("The member has 3 duty days to accept or reject [nonjudicial punishment] following notification of the intent to impose [nonjudicial punishment]. . . . In practical application, the member is not required to accept or reject NJP sooner than 72 hours following notification of the intent to impose [nonjudicial punishment].")

The appellant submitted a memorandum in which he denied the allegations. He provided an alibi for his whereabouts on the days the phones were stolen and evidence that the lock on his wall locker was broken, enabling someone else to place the phones there without his knowledge. In a separate memorandum, his defense counsel stated: "Even though A1C Gray believes he is completely innocent of the allegations against him in the Article 15 and that you have likely prejudged his guilt and punishment, he feels than an unfair Article 15 is better than an unfair [second] court-martial."

At 1600 hours that same day, the appellant's commander found him guilty and imposed a punishment of reduction in grade from E-3 to E-2 and a reprimand. Although the Air Force Form 3070 gave him until 6 August to make his decision whether to appeal, the appellant elected not to appeal at 0730 hours the following morning (40 minutes before his court-martial began). *See* AFI 51-202, ¶ 4.5.2.2 ("[T]he appeal can be filed anytime within 5 calendar days" after the member acknowledges receipt of the punishment and his right to appeal.).

The Government completed the processing of the nonjudicial punishment that same day, and it was admitted into evidence during the sentencing phase of the court-martial later that afternoon.[2] When the military judge asked the parties if there were any agreements with respect to the handling of the nonjudicial punishment, trial defense counsel responded it was her understanding that if the nonjudicial punishment was not complete prior to the court-martial, it would be withdrawn and its charges sent to

---

[2] According to Air Force Instruction 51-202, *Nonjudicial Punishment*, ¶ 6.5 (11 August 2011), the nonjudicial punishment is final and admissible in courts-martial for purposes of Rule for Courts-Martial 1001(b)(2) following the legal review by the servicing staff judge advocate, even though the administrative supervisory review by the general court-martial convening authority's staff judge advocate has not yet occurred.

a second court-martial.[3]  The Government did not contest these claims, either at trial or on appeal.

When trial counsel offered only the Air Force Form 3070, defense counsel objected, arguing the rule of completeness required the admission of the appellant's response.  The military judge sustained the objection.  Trial counsel then offered both the Air Force Form 3070 and the appellant's response, and the appellant did not object.  Trial counsel referenced this recent misconduct during his sentencing argument, contending it showed the appellant had low potential for rehabilitation.

Although he did not object at trial, the appellant now contends the nonjudicial punishment was improperly admitted in violation of his due process rights because he was "coerced" into accepting the nonjudicial punishment forum and not given the full amount of time authorized for his decisions regarding that forum.  The essence of the appellant's complaint is that the Government improperly rushed this nonjudicial punishment so the military judge would have it before him when he was determining the appellant's sentence.

A military judge's decision to admit sentencing evidence is reviewed for an abuse of discretion.  *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010).  Failure to object forfeits appellate review absent plain error.  *United States v. Eslinger*, 70 M.J. 193, 197–98 (C.A.A.F. 2011); R.C.M. 1001(b)(2).  "To prevail under a plain error analysis, [the appellant bears the burden of showing] that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'"  *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

Under R.C.M. 1001(b)(2), the Government may introduce personal data and information pertaining to the character of the accused's prior service.  This rule provides as follows:

> *Under regulations of the Secretary concerned*, trial counsel may obtain and introduce from the personnel records of the accused evidence of the accused's . . . character of prior service.  Such evidence includes copies of reports reflecting the past military efficiency, conduct, performance, and history of the accused and evidence of any disciplinary actions including punishments under Article 15[, UCMJ]. "Personnel records of the accused" includes any records made or maintained in accordance with departmental regulations

---

[3] A similar statement was included in the defense counsel's submission to the commander as part of the appellant's response to the nonjudicial punishment:  "[T]he Government notified us that if [the appellant] refuses to accept this forum before his court-martial tomorrow, this Article 15 will be withdrawn and he will be court-martialed again."

that reflect the past military efficiency, conduct, performance, and history of the accused.

(Emphasis added).

In the Air Force, the "regulation[] of the Secretary concerned" is AFI 51-201, *Administration of Military Justice* (6 June 2013). *See United States v. Sheridan*, 43 M.J. 682, 685 (A.F. Ct. Crim. App. 1995). In pertinent part, AFI 51-201, ¶ 8.13.1 states "relevant material" from an accused's unit personnel information file may be admitted if the defense is provided a copy prior to trial and if the document indicates the accused had the opportunity to respond to the allegation in the document. It further states nonjudicial punishment records may be admitted "from any file in which the record is properly maintained by regulation" if not over five years old. *Id.* at ¶ 8.13.2. An accused can object to a particular document as inaccurate, incomplete, or because it contains matters that are not admissible. R.C.M. 1001(b)(2).

Applying these requirements to the nonjudicial punishment at issue here, we find it facially complied with the regulation of the Secretary concerned, and the appellant does not disagree. Instead, the appellant argues it was error for the military judge to admit this nonjudicial punishment into evidence due to the circumstances of how it was actually processed. We agree it was error but find the error did not materially prejudice a substantial right of the appellant.

The Government's insistence on the shortened processing time for the nonjudicial punishment in order to ensure it was admitted at trial effectively required the appellant to relinquish his statutory right to appeal his punishment. Article 15(e), UCMJ. Because this materially prejudiced a substantial right of the appellant, the nonjudicial punishment was not "properly maintained" in the appellant's records and should not have been admitted. *See Manual for Courts-Martial, United States*, Part V, ¶ 1.i. (2012 ed.) (stating that the failure to comply with Part V's provisions invalidates a nonjudicial punishment if the error materially prejudiced a substantial right of the servicemember); AFI 51-202, ¶ 6.9 (stating that a nonjudicial punishment proceeding is legally insufficient if an error that materially prejudiced a substantial right of the member occurred).

Additionally, the insistence on expedited processing of the nonjudicial punishment leads to the obvious conclusion that this was done in order to influence the appellant's sentence at trial.[4] Military members facing trial by court-martial are not exempt from

---

[4] Unwritten agreements made prior to trial can be improper sub rosa agreements, even if they do not relate to guilty pleas. *United States v. Rhule*, 53 M.J. 647, 653 (Army Ct. Crim. App. 2000) ("While there is no specific statutory prohibition or other restriction in the Manual for Courts-Martial . . . against undisclosed agreements that are not also plea agreements, sub rosa or so-called 'gentlemen's agreements' have been condemned in a number of opinions.") Although defense counsel here stated she did not consider this agreement about processing the nonjudicial punishment to be a sub rosa understanding regarding the court-martial, further inquiry by the military judge into the circumstances would have aided in this court's consideration of the admissibility of this document.

disciplinary action in advance of their trials, and the timing of a commander's decision to document a member's misconduct does not automatically render a disciplinary document inadmissible. *United States v. Beaver*, 26 M.J. 991, 993 (A.F.C.M.R. 1988); *United States v. Goldsmith*, 29 M.J. 979, 985 (A.F.C.M.R. 1990); *United States v. Hood*, 16 M.J. 557, 560 (A.F.C.M.R. 1983). However, we find that if a nonjudicial punishment is processed in order to influence the sentencing decision of a court-martial, that document is not "properly maintained" in an individual's military record and is not admissible even if maintained within that record. *Cf. United States v. Boles*, 11 M.J. 195, 198–99 (C.M.A. 1981) (holding that letters of reprimand and other administrative actions are not admissible at a court-martial if they are given for a punitive, as opposed to a corrective, purpose or to influence the sentencing decision of the court-martial); *United States v. Williams*, 27 M.J. 529, 530 (A.F.C.M.R. 1988); *United States v. Hagy*, 12 M.J. 739, 744 (A.F.C.M.R. 1981); *United States v. Brister*, 12 M.J. 44, 45 (C.M.A. 1981); *United States v. Dodds*, 11 M.J. 520, 522 (A.F.C.M.R. 1981).

However, we do not find the admission constituted plain error as we do not find any material prejudice to a substantial right of the appellant in this case, and we do not find the facts here rise to the level of a due process violation. The appellant and his counsel made a reasonable strategic choice to accept the nonjudicial punishment forum as opposed to facing a second court-martial. Additionally, he was sentenced by a military judge who knew the general circumstances of how this nonjudicial punishment was processed and who would place it in the appropriate context in deciding an appropriate punishment for the appellant for the offense to which he pled guilty. The appellant's trial defense counsel successfully argued for the inclusion of the appellant's response to the nonjudicial punishment, giving the military judge information about the appellant's version of the events.

## *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court